**Ray V. MARSHALL, Secretary of Labor, Petitioner,**

v.

**M. W. WATSON, INC., and Occupational Safety and Health Review Commission, Respondents.**

**No. 79-2321.**

United States Court of Appeals, Tenth Circuit.

Argued May 11, 1981.

Decided July 1, 1981.

John A. Amodeo, Atty., U. S. Dept. of Labor, Washington, D. C. (Carin A. Clauss, Sol. of Labor, Benjamin W. Mintz, Associate Sol. for Occupational Safety & Health, Allen H. Feldman, Counsel for Appellate Litigation, and John A. Bryson, Acting Asst. Counsel for Appellate Litigation, Washington, D. C., with him on the brief), for petitioner.

Thomas M. Moore of Gould & Moore, Kansas City, Mo., for respondents.

Before SETH, Chief Judge, HOLLOWAY, Circuit Judge, and KERR, District Judge.*

KERR, District Judge.

Secretary of Labor, petitioner, prosecutes this appeal from an adverse decision of the Occupational Safety and Health Review Commission (OSHRC) pursuant to § 11(b) of the Occupational Safety and Health Act of 1970, 29 U.S.C. § 651 et seq. Jurisdiction is predicated upon 29 U.S.C. § 660(b).

Respondent M. W. Watson, Inc. (Watson) was charged with two citations alleging violations of 29 C.F.R. 1926.21(b)(2) (failure to provide adequate safety instructions) and 29 C.F.R. 1926.652(c) (failure to meet specific trenching requirements). Proposed penalties of $900 and $9,000, respectively, were imposed for the violations. Watson filed a timely contest against the citations and proposed penalties. The case was later heard by an Administrative Law Judge (ALJ) of the Occupational Safety and Health Administration in Topeka, Kansas. In his decision, he found that no violation of 29 C.F.R. 1926.21(b)(2) had occurred and the citation was vacated accordingly. The ALJ further found a violation of 29 C.F.R. 1926.652(c) had occurred but he modified the violation from willful to serious. He reduced the penalty for the violation from $9,000 to $50.

Pursuant to 29 U.S.C. § 661(i), the Secretary of Labor petitioned to review the decision of the ALJ. The petition was not granted by any member of OSHRC and, therefore, pursuant to 29 U.S.C. 661(i), the decision of the ALJ became final by operation of law.

Watson is a construction company engaged in heavy construction activities. On June 28, 1978, Watson was in the process of excavating a three foot wide trench through an earthen dike located between two man-made lagoons. The dike consisted of previously undisturbed, hard, compact soil with a shale base. At the time of excavation, the soil was moist and not dried out, which added to its stability. The trench in question began at the floor level of one lagoon and was to cut through the dike to the second lagoon. As the excavation proceeded, the depth of the trench increased, reaching maximum depth at the highest portion of the dike. Upon completion of the trench, a water pipe was to be laid to connect the two lagoons. A backhoe was used for the excavation and was operated by a highly experienced individual, William Dinkel, Jr. (Dinkel, Jr.). The sides of the trench were vertical and not sloped.

On June 28, 1978, the day of the accident, employees of Watson arrived at the job site at 7:00 a. m. Employees Balagna and Mascarello removed the necessary work tools for the day's work from the job trailer and carried them over to where the work would be commenced that day. William Dinkel, Sr. (Dinkel, Sr.), the General Superintendent for Watson, and Balagna left the job site to go and pick up materials to shore the trench later in the day.

The trenching work was commenced when the backhoe began excavating approximately 10 to 15 feet into the dike. The depth of the trench at this point ranged from ground level to five feet. Balagna and Mascarello were assigned to check the grade. Balagna handled the grade stick and Mascarello handled the transit. In order to check the grade, Balagna would take

---

* Of the United States District Court for the District of Wyoming, sitting by designation.

the grade stick and walk into the trench holding the grade stick upright while Mascarello would sight the grade stick through the transit. The backhoe would remain in its setting until the grade was checked because the bottom of the trench was composed of shale which could only be dug by the backhoe.

The second setting and subsequent excavation and grade check followed the pattern of the first excavation and was without incident.

The third setting cut through the highest portion of the dike. Upon completion of the third excavation, the overall length of the trench was 30 to 35 feet. Approximately fifteen to twenty feet of the trench were over five feet deep. Balagna entered the maximum depth of the trench, ten feet, to check the grade after the third setting and subsequent excavation by the backhoe.

For some unknown and unanticipated reason, Balagna walked back into the trench after he had finished checking the grade and called to Mascarello to come in and join him. Mascarello started back into the trench to see what Balagna wanted. An unusual form of cave-in called a "blowout" occurred, trapping both employees. Mascarello was removed safely, but Balagna was killed.

At the time of the accident, Dinkel, Sr. was talking to the carpenters who were getting ready to install the shoring.

After the accident, a compliance officer for the Occupational Safety and Health Administration investigated the incident. After the investigation was completed, the two citations noted above were entered against Watson. Watson filed a contest to the citations and an administrative law judge was assigned to hear the case. After a hearing, the ALJ dismissed the first citation and modified the second citation from willful to serious. The ALJ also lowered the penalty for the second citation from $9,000 to $50. OSHRC declined to review the decision of the ALJ and it became final. See 29 U.S.C. § 661(i).

The Occupational Safety and Health Act is considered to be remedial in nature. The findings of OSHRC are to be upheld upon review if there is substantial evidence to support them. *Kent Nowlin Construction Company, Inc. v. Occupational Safety and Health Review Commission and Secretary of Labor*, 648 F.2d 1278 (10th Cir. 1981); *Austin Building Company v. Occupational Safety and Health Review Commission and Secretary of Labor*, 647 F.2d 1063 (10th Cir. 1981); *Marshall v. Cities Serv. Oil Co.*, 577 F.2d 126 (10th Cir. 1978).

■ The first citation alleged a violation of 29 C.F.R. § 1926.21(b)(2) which states in pertinent part:

(2) The employer shall instruct each employee in the recognition and avoidance of unsafe conditions and the regulations applicable to this work environment to control or eliminate any hazards or other exposure to illness or injury.

The ALJ vacated this citation based upon many factors. Initially the ALJ noted that the Secretary's rationale in issuing the citation was that Watson "failed to train its employees in shoring and sloping activities." As the ALJ aptly pointed out, Mascarello and Balagna were not going to be working installing shoring material or sloping trenches. Rather, the burden placed upon Watson in this instance was to train the employees in hazard recognition related to their work. After a complete review of the record, we hold that the record shows that Watson did provide its employees with such instruction. Watson not only had a general safety program in effect, it also held regular meetings at job sites with specific instruction for employees. Watson was a safety leader in the State of Kansas, having established several safety programs for the benefit of the State and other contractors. Watson has won the A.G.C. safety award nearly every year for the past several years. Furthermore, the record discloses that Watson enjoys an excellent reputation for safety between both labor and management. An employee who fails to comply with required safety standards is sent to his union for discipline. Further infractions result in the termination of the employee.

Mascarello had been warned at an earlier job site about the dangers of trenching. Balagna had gone with the superintendent to get the shoring material for the trench the very morning of the accident. The decedent had even inquired of the superintendent, Dinkel, Sr., what the material was for. We hold that the decision to vacate the citation given for a violation of 29 C.F.R. § 1926.21(b)(2) is substantially supported by the evidence and is neither arbitrary nor capricious.

■ The second citation alleged a violation of 29 C.F.R. 1926.652(c) and assessed a penalty of $9,000. 29 C.F.R. 1926.652(c) reads as follows:

(c) Sides of trenches in hard or compact soil, including embankments, shall be shored or otherwise supported when the trench is more than 5 feet in depth and 8 feet or more in length. In lieu of shoring, the sides of the trench above the 5 foot level may be sloped to preclude collapse . . .

The citation classified the violation as "willful". In his Order, the ALJ rejected the contention that the violation was willful and instead held that it was serious. The penalty was reduced from $9,000 to $50.

The term "willful" is not defined in the Act. We have considered the term before and have defined it in *Kent Nowling Construction v. Occupational Safety and Health Review Commission and Secretary of Labor,* 593 F.2d 368 (10th Cir. 1979) as follows:

The failure to comply with a safety standard under the Occupational Safety and Health Act is willful if done knowingly and purposely by an employer, who having a free will or choice, either intentionally disregards the standard or is plainly indifferent to its requirement. An omission or failure to act is willfully done if done voluntarily and intentionally.

See also *Kent Nowling Construction Company, Inc. v. Occupational Safety and Health Review Commission and Secretary of Labor,* 648 F.2d 1278 (10th Cir. 1981) in which we again affirm the above definition.

There is substantial evidence in the record to support the actions of the ALJ in reducing the violation from willful to serious.

Initially we note that the excavation was carried out with safety in mind. The top part of the dike was bulldozed to lower the depth of the trench and the "spoil pile" was placed far away from the sides of the trench. Shoring materials, along with personnel to install them, were present at the job site. The superintendent and the decedent had gone to get the shoring material earlier that morning.

The trench itself was not sloped in order to preserve the natural integrity of the dike. If shoring had been placed in the trench prior to the time of the accident, it would have been necessary to remove the same before the backhoe was placed in another setting. Reason would dictate that the continual installation and removal of shoring would weaken the natural stability and integrity of the walls of the trench.

We agree with the ALJ that, under the Secretary's argument in support of the citations, a willful and serious violation would be one and the same. If such a result was intended, there would have been no need for separate sections discussing willful and serious violations under the Act.

We further agree with the analysis of the ALJ that a penalty of $9,000 was excessive. A review of the record shows that Watson has an excellent safety record and reputation in the community. The record also shows that Watson is a conscientious construction company which is concerned about safety and has demonstrated innovation in that area. The initial penalty would, in effect, fail to differentiate between those who sincerely attempt to enforce safety standards and those who do not.

Nevertheless, the undisputed fact still remains that Watson did technically violate the regulation in question by permitting Balagna to enter an unshored trench more than 5 feet in depth and 8 feet or more in length. Therefore, the finding of the ALJ that a serious violation had occurred, and the subsequent assessment of a $50 penalty

is supported by substantial evidence and is neither arbitrary, capricious nor an abuse of discretion.

AFFIRMED.