**DANIEL INTERNATIONAL CORPORATION,**
Petitioner-Appellant,

v.

**Raymond DONOVAN, Secretary of Labor, and Occupational Safety and Health Review Commission, Respondents-Appellees.**

No. 81–1714.

United States Court of Appeals, Tenth Circuit.

April 12, 1983.

---

George A. Harper, Thompson, Mann & Hutson, Greenville, S.C. (Carl B. Carruth, Thompson, Mann & Hutson, Greenville, S.C., with him on the brief), for petitioner-appellant.

Judith N. Macaluso, U.S. Dept. of Labor, Washington, D.C. (T. Timothy Ryan, Jr., Sol. of Labor, Frank A. White, Associate Sol. for Occupational Safety & Health, Allen H. Feldman, Counsel for Appellate Litigation, Tederick A. Housh, Jr., Regional Sol., Thomas L. Holzman, Attorney, Washington, D.C., on brief), for respondents-appellees.

Before Honorable McWILLIAMS, DOYLE and LOGAN, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

This is an alleged violation of the Occupational Safety and Health Act of 1970 (OSHA), 29 U.S.C. §§ 651–678 (1970). The Secretary of Labor issued four citations against the Company for eight separate violations of OSHA. The citations were for exposing employees to falls by having insufficient guardrails and by failing to maintain temporary flooring within 30 feet beneath the levels on which employees were working and for inadequately bolting steel beams above the 89 foot level, two bolts were used where there should have been more. Some of the violations were characterized as willful. The amount of the proposed penalties amounted to $7,745.

Daniel contested the citations and was given a hearing before the Administrative Law Judge, whose opinion, dated January 19, 1976, affirmed each citation and imposed the proposed penalty. On review, the Occupational Safety and Health Review Commission upheld the judge's decision. One commissioner, Acting Chairman Barnako, dissented from that part of the Commission's opinion which affirmed the citation for exposing employees to falls through unguarded floor holes and over floor perimeters. Jurisdiction arises here pursuant to 29 U.S.C. § 660(a) (1970).

As indicated above Daniel is a construction company which was engaged in erecting the skeletal framework for a power plant. The outside of the framework had vertical columns of varying length, placed

one on top of the other and bolted together, and horizontal beams and cross-braces at various levels. The inside of the framework had columns, beams and cross-braces. The structure was designed to contain boilers and related power generating equipment, consequently the floors were not spaced regularly as they would be in an office or apartment building. There would be permanent floors but at irregularly spaced levels. Daniel seeks to make something of this. We will take it up in the course of the opinion.

Daniel's worksite was inspected on February 4, 1975 after two employees made complaints. The steel framework had risen to 237 feet above the ground. Partial temporary floors were in place at two levels, one 45 feet above the ground and the other 89 feet above the ground. The perimeter of both these levels was guarded with a single cable functioning as a guardrail. There were two unguarded floor holes at the level 89 feet above the ground. At two other locations on that level nets had been placed over steel members. The nets did not extend beyond the edge of the building. From that level upward, 148 feet, there were no nets or flooring. Further, the steel beams in the structure's upper 148 feet were held in place with only two bolts at each end; final bolting up would require between six and twenty-four bolts per connection. The administrative law judge found that Daniel had hurriedly installed the upper framework and left it unfinished so the bolt up crew could be kept busy while a crane was modified.

On the day of inspection only one employee was working at the level 89 feet above the ground due to a storm. There were a number of employees working at the 45 foot level. The compliance officer did not see any employees working close to either floor hole at the 89 foot level or near the two floors' perimeter. Several employee witnesses who testified before the administrative law judge said that they used safety belts whenever they worked in the structural steel.

The administrative judge made the following findings of fact relevant to the charge Daniel willfully violated OSHA requirements:

The ironworkers' shop steward told [Daniel's] employee, Rook, prior to the inspection that they were going too high with the steel before bolting it up properly as required by the standard. Prior to inspection by compliance officer Barker, ironworkers' shop steward Malloy also told Mr. Critchfield [the superintendant] that iron was going too high without being properly bolted up. [Daniel's] safety engineer, Hess, called to the attention of Mr. Rook and Mr. Critchfield that steel was being erected in excess of the limits described by the construction standards of OSHA. Mr. Critchfield was advised of the fact of this violation of the OSHA standard in writing. Mr. Critchfield was advised on more than one occasion that [Daniel] was in violation of section 1926.750(a)(2) for the violation of having more than 48 feet of unfinished bolting or welding above the foundation or uppermost permanently secured floor. He was advised of this several weeks prior to the compliance officer's inspection. [Daniel's] ironworkers were employed at over 48 feet of unfinished, unbolted ironwork all the way to the top point to approximately January 15 before the compliance officer's inspection. Prior to the safety inspection, Mr. Critchfield, representing [Daniel], was also aware that there were no safety nets extending out from the sides of the building at the peril points mentioned in the complaint. [Daniel's] safety engineer, Hess, admitted receiving a safety minutes bulletin dated July 15, 1974, subject: OSHA REVISES FLOORING REQUIREMENTS FOR SKELETON STEEL CONSTRUCTION. The safety bulletin was sent to Hess by Arnold Runyon, safety director to Daniel International. The bulletin was also made known to [Daniel's] supervisory personnel, Mr. Critchfield and Mr. Rook. Mr. Hess also received another safety bulletin dated May 6, 1974. This bulletin restates the OSHA revised requirements

for skeleton steel construction, including plank and substantial flooring requirements, that it be maintained within two stories or 30 feet, whichever is less, below and directly under that portion of each tier of beams on which any work is being performed. Memorandum Opinion at 25–26 [citations omitted].

The questions are

1. Whether there is substantial evidence to support the Commission's finding that Daniel violated 29 C.F.R. §§ 1926.-750(a)(2), (b)(1)(ii), and (b)(2)(i), and 29 C.F.R. § 1926.105(c)(1).

2. Whether there is substantial evidence to support the finding that the violations were willful.

3. Whether substantial evidence supports the Commission's finding that Daniel violated 29 C.F.R. §§ 1926.500(d)(1) and (f)(1)(vi).

■ The object of OSHA is to bring about job safety and prevent injuries that result from the negligent conduct of a job. Where the provisions of OSHA can be read two ways: (1) The Commission should enforce the interpretation that will better achieve OSHA's goal of ensuring safe workplaces, *Marshall v. Western Electric, Inc.,* 565 F.2d 240 (2d Cir.1977); (2) the Secretary's interpretations of provisions in OSHA are controlling even though other interpretations are equally reasonable, *Clarkson Construction Co. v. OSHRC,* 531 F.2d 451, 457 (10th Cir.1976). A "willful" violation of OSHA is a failure to comply with OSHA's safety standards "done knowingly and purposely by an employer who, having a free will or choice, either intentionally disregards the standard or is plainly indifferent to its requirement. An omission or failure to act is willfully done if done voluntarily and intentionally." *Kent Nowlin Construction Co. v. OSHRC,* 593 F.2d 368, 372 (10th Cir.1979).

### Do "tiered building" safety standards apply?

Daniel's argument both before the Commission and in its appeal to this court is that the structure it was erecting should not be subject to the tiered building safety standards found in 29 C.F.R. § 1926.750. If the structure at issue is a tiered building, Daniel violated standards requiring: (1) finished bolting within 48 feet of the top of the framework; (2) temporary flooring two stories or 30 feet below the level where workers are erecting skeleton steel; or, (3) nets within two stories or 25 feet of the workers if temporary flooring is impractical. Nets must be hung so that falling workers would not strike the surface of any structure below the netting.

Daniel argues that only conventional multifloored structures are "tiered buildings," relying on references in the standard to "floors" in tiered buildings and on the Commission's decision in Daniel Construction Co., 1976–77 CCH OSHD ¶ 21,521 (No. 7734, 1977), which will be referred to as *Daniel I.*

In the *Daniel I* case a divided Commission decided that the Act's tiered building safety standards applied only to multi-floored structures. The majority of the Commission in the present case felt that it was necessary to overrule the mentioned *Daniel I* ruling so that the protections envisioned in the Act would apply to the construction of any steel framed structure. The Commission reasoned that all such buildings involve similar construction methods regardless of whether they will have permanent multi-level floors. The Secretary agrees with this interpretation of "tiered building." It would be very strange to read the Act so as to reach a different conclusion simply because the floors do not appear at regular intervals. This does not cut down the hazard one bit. The Commission said:

> We therefore overrule *Daniel I* and hold that the term "tiered building" is not limited to multi-floored structures but includes any building or structure in which a skeleton steel framework is erected in vertically stacked steel columns. Because the instant record shows that the power plant boiler building was erected in this manner, we reject Daniel's contention that the cited section 1926.750 standards are inapplicable. OSHRC Opinion at 8.

Acting Chairman Barnako concurred in the Commission's decision that the structure at issue was a tiered building. His reasoning was that *Daniel I* distinguished tiered buildings from open-bay or loft-type structures in which temporary floors could not practicably be installed and which would not have permanent floors at different levels when completed. Consequently, Acting Chairman Barnako dissented from reversal of *Daniel I* because it was unnecessary: the building here would have multi-levels of permanent floors when completed and lent itself to the use of temporary floors during construction.

■ In short, then, all members of the Commission agreed that the structure at issue was a tiered building. Daniel urges this court to reverse that finding and limit the tiered building requirements to multifloored buildings such as a conventional office or apartment building.

Our position is that the Commission is entitled to be affirmed. In the first place, none of the cases Daniel cites reads § 1926.-750 to apply solely to conventional multifloor buildings with regularly spaced floors. Rather, conventional buildings are used as examples of the structures OSHA's tiered building requirements contemplate. In *Daniel I* for instance, a dissenting Commissioner felt that tiered building standards applied to the erection of steel buildings "which have a number of floors, as do conventional office and apartment buildings." Daniel Construction Co., 1976–1977 CCH OSHD ¶ 21,521 (No. 7734, 1977) (Commissioner Cleary, dissenting).

The Commission's interpretation of a tiered building has not been so narrow as Daniel maintains. In McKee-Wellman Power Gas, 1977–78 CCH OSHD ¶ 21,972 (Rev.Comm'n.1977), for example, the Commission held:

> [T]hat a tiered building is one which, when completed, will contain permanent floors and in which, during construction, the use of temporary floors will for the most part be practicable. *Id.*, at 26, 280.

There is no basis for this court to go beyond precedent in this case. The structure at issue is a multifloored building in which temporary floors could practicably be installed. Section 1926.750 was intended to require contractors erecting such structures to maintain temporary floors, or nets where flooring was impracticable, a safe distance below workers installing the structure's steel framework. Such a reading of the applicability of OSHA's tiered building standards to the structure here eliminates any need to consider Daniel's arguments premised on the assertion that conditions at its worksite ought to be judged by general safety standards.

*Does the evidence support the conclusion that there were bolt up violations?*

■ The standards do not provide a definition of "finished" or "unfinished" bolting in the OSHA code. Section 1926.750(a)(2) forbids erecting above the foundation or uppermost permanently secured floor more than four floors or 48 feet of steel framework with "unfinished bolting." Section 1926.751(a) specifies that during construction steel beams should not be released from hoisting lines until they are secured by at least two bolts at each connection.

Daniel had 148 feet erected above the last permanently secured floor which was secured by only two bolts at each beam connection. This was on the day of the inspection. It is contended by Daniel that it met the finished bolt up requirements for the upper 148 feet for the reasons: (1) the two bolts that were used for each connection were high-strength A–325 bolts, and (2) the structure was designed to hold heavy power plant operating equipment. Since that equipment was not yet installed, the structure was able to support itself even with minimal bolting up. In short, Daniel's arguments raise factual questions regarding the sheer strength of particular bolts and the engineering of the structure at issue.

The testimony was presented to the administrative law judge from experts and from the compliance officer. The judge noted that each of the beam connections was intended to use from 6 to 24 bolts, that the structure would have to withstand win-

ter winds and bear the weight of ice in addition to bearing its own weight during construction, and that Daniel was habitually behind schedule on this job and was erecting steel quickly so that bolt up crews would be kept busy while the crane used to hoist the beams was shut down for modifications necessary to complete the building.

The Commission looked at the controlling standards and determined that since two bolts are required simply to release a beam from hoisting cables that the separate finished bolt up requirements impliedly require additional bolts before a level is "permanently secured."

This inference by the Commission is supported in the evidence recited by the administrative law judge. Considering the Commission's presumed expertise regarding bolt strength and building design, we are disposed to affirm the Commission's determination that Daniel violated OSHA's finished bolt up standards.

### Were the Violations Willful?

■ Daniel maintains its violations of the OSHA safety standards could not be "willful" because it could not know that the Commission would apply tiered building construction requirements to the LaCygne, Kansas power plant. Absent such knowledge Daniel could not knowingly and purposely either intentionally disregard the safety standards or act with plain indifference to their requirements; the characteristics of "willful" violations as defined by this court. *Kent Nowlin Construction Co. v. OSHRC,* 593 F.2d 368, 372 (10th Cir.1979) (quoting *United States v. Dye Const. Co.,* 510 F.2d 78, 81 (10th Cir.1974)).

The administrative law judge noted in his opinion many instances in which Daniel's own safety engineer, Hess, and the ironworkers' steward told project supervisors that Daniel was violating tiered building fall protection and finished bolt up standards. The Commission affirmed the judge's factual finding that Daniel had reason to know of OSHA's requirements yet made no effort to comply. The Commission also affirmed the proposed penalty which

was far below the maximum fine it could have imposed. That is an indication the Commission properly considered the relative degree of Daniel's culpability.

In view then of the support for these factual findings in the record and the plain indications that the Commission properly reviewed the evidence of Daniel's willful violations of OSHA, we must confirm the Commission's finding that Daniel knew of OSHA's standards and either intentionally disregarded them or acted with plain indifference to their requirements. *Kent Nowlin Const. Co., Inc. v. OSHRC,* 648 F.2d 1278, 1281 (10th Cir.1981).

### Were the workers exposed to inadequately guarded floor holes and perimeters?

■ Finally Daniel maintains that the Commission committed error in its finding that Daniel violated 29 C.F.R. § 1926.-500(d)(1) since workers were exposed to the hazard of falling through the unguarded floor holes or over the inadequately guarded perimeters. It is Daniel's contention that it cannot be inferred by the Commission that workers were exposed merely by virtue of the presence of a hazard; the Secretary is obligated to establish exposure through evidence showing employees were close enough to the hazard to be in danger. Acting Chairman Barnako dissented from this part of the Commission's ruling based on the fact that the record did not show actual worker exposure to the hazards.

But Daniel does not argue that the perimeters or floor holes were ever adequately protected with guardrails. Daniel notes that the Secretary must show worker exposure and companies have no burden to show that workers never came within the zone of danger posed by the hazard. Where, however, the hazards are obvious and undisputed and they are present on levels where construction is going on, it is impossible to say that workers are not exposed to the hazards.

It has been observed by the Second Circuit that the requirement for the Secretary to establish worker exposure to a hazard is

not to be read to mean that an inspector must see an employee "teetering on the edge of the floor 150 feet or so up from the ground." *Brennan v. OSHRC and Underhill Const. Co.,* 513 F.2d 1032, 1039 (2d Cir. 1975).

The Fifth Circuit has also reached a similar conclusion pertaining to the proof necessary to establish exposure. This was in *Mineral Industries & Heavy Construction Group v. OSHRC,* 639 F.2d 1289, 1294 (5th Cir.1981):

> The OSHRC need not prove that a given employee was actually endangered by the unsafe condition, but only that it was reasonably certain that some employee was or would be exposed to that danger.... The goal of the Act is to prevent the first accident, not to serve as a source of consolation for the first victim or his survivors. Hence, no proof of specific instances where employees were exposed to the hazardous condition is necessary to support the finding of a violation. [citations omitted]

For that reason the Commission has determined that the Secretary need show only the existence of the hazardous condition and its accessibility to employees in order to satisfy the burden of proving exposure. Stahr and Gregory Roofing Co., 1979 CCH OSHD ¶ 23,261 (No. 76–88–1079). Evidence is shown in the record that despite the poor weather conditions on the day of the inspection one employee was walking throughout the level 89 feet above ground and other employees were working on the level 45 feet above ground. Therefore, even if this court were to reject the reasonable inference that workers are exposed to hazards which exist where there is continuous construction, the evidence of worker exposure in the record is adequate to affirm the Commission's ruling. The citation against Daniel for serious violations of 29 C.F.R. §§ 1926.500(d)(1) and (f)(1)(vi) must stand, in other words there is substantial evidence to establish that workers were exposed to hazardous conditions.

## CONCLUSION

The remedial nature of OSHA together with the Commission's presumed expertise in viewing, interpreting and applying that act's safety standards cause courts to exercise caution in the course of review before disturbing Commission rulings. In the present case this court could reverse the penalties imposed on Daniel only by rejecting the Commission's interpretation of "tiered building" and "finished bolting" and finally by rejecting the factual findings regarding Daniel's culpability in exposing workers to safety hazards.

There being substantial evidence in the record to support the Commission's factual conclusions together with the reasonableness of the Commission's interpretation of the OSHA provisions at issue, the Commission's ruling should be and the same is hereby affirmed.