766 F.2d 804
 54 USLW 2066, 12 O.S.H. Cas.(BNA) 1393,
1984-1985 O.S.H.D. ( 27,326
 Raymond J. DONOVAN, Secretary of Labor, Petitioner,
v.
ADAMS STEEL ERECTION, INC., Respondent,
International Association of Bridge, Structural and
Ornamental Workers, AFL-CIO, and the Building and
Construction Trades Department, AFL-CIO,
Intervenors.
 No. 84-3586.
 United States Court of Appeals,
Third Circuit.
 Submitted April 30, 1985.
Decided July 5, 1985.
 
 Francis X. Lilly, Solicitor of Labor, Frank A. White, Associate Solicitor for Occupational Safety & Health, Judith N. Macaluso, Asst. Counsel for Appellate Litigation, Domenique Kirchner, Atty. U.S. Dept. of Labor, Washington, D.C., for petitioner.
 Marshall H. Harris, Regional Sol., Philadelphia, Pa., Elihu I. Leifer, Victoria L. Bor, D. William Heine, Jr., Sherman, Dunn, Cohen, Leifer & Counts, Washington, D.C., for intervenors.
 Victor Van Bourg, Van Bourg, Weinberg, Roger & Rosenfeld, San Francisco, Cal., for respondent.
 Before SEITZ, WEIS, and ROSENN, Circuit Judges.
 OPINION OF THE COURT
 ROSENN, Circuit Judge.
 
 
 1
 The petitioner, the Secretary of Labor (the Secretary), seeks review of a final order of the Occupational Safety and Health Review Commission (the Commission)[1] vacating two citations that had been issued to the respondent, Adams Steel Erection, Inc. (the Company) for alleged violations of the Occupational Safety and Health Administration (OSHA) regulations for the construction industry. See Adams Steel Erection, Inc., 11 O.S.H.Cas. (BNA) 2073 (Rev.Comm'n 1984). The first citation charged the respondent with permitting employees to work on the perimeter of a building without any protection against falls to the outside of the structure. The Commission vacated this citation upon concluding that the steel erection standard, 29 C.F.R. Sec. 1926.750(b), which was not violated, was exclusive and preempted the general standard, 29 C.F.R. Sec. 1926.105(a), under which the citation had been issued.
 
 
 2
 The second citation charged the Company with failing to ensure that its employees wore hard hats to protect against head injuries from impact and falling objects. See 29 C.F.R. Sec. 1926.100(a). The Commission concluded that the Secretary must prove more than mere "access" to a zone of danger, and vacated this citation as well. We reverse the Commission with respect to both citations.
 
 I.
 
 3
 Respondent is a steel erector that in 1977 agreed to erect the structural steel frame for a four-story tiered building in Robinson Township, Pennsylvania. By October 20, 1977, steel beams had been erected to the forty-foot level. On that day, OSHA compliance officer Cammarata inspected the worksite. He observed two of respondent's employees working at the fourth level of this structure on parallel perimeter beams approximately 40 feet above the ground level. Metal decking had been installed as a temporary floor at the twenty-foot level. The workers were constantly in motion, moving back and forth from large building material containers to the edge of the beams, and from spot to spot. They were exposed to the danger of falling forty feet from the steel beams to the ground and suffering serious injury or death. Nevertheless, they were neither "tied off" with safety belts to the building nor protected by safety nets. Furthermore, they were not wearing hard hats to protect themselves against injury from impact or falling objects.
 
 
 4
 The inspector also observed and photographed a number of other employees on the forty-foot level moving building materials back and forth across the beams. These materials could have fallen to the third level below and possibly caused serious head injuries. The inspector also observed an employee at the thirty-foot level moving back and forth across a beam. This employee had no protection against exterior falls and he wore no hard hat to protect himself against potential head injury from impact or falling materials. Another employee at the third level was observed welding bar joists to the steel beams in the interior of the building. He too did not wear a hard hat.
 
 
 5
 One of the resulting citations alleged a serious violation of 29 C.F.R. Sec. 1926.105(a) for failing to protect employees against falls of 25 feet or more by the use of safety nets.[2] The second citation alleged a non-serious violation of 29 C.F.R. Sec. 1926.100(a) for failing to ensure that the Company's employees wore hard hats to protect against head injuries from impact and falling materials. The Company timely contested the citations and the ALJ held a hearing. He ultimately affirmed the section 1926.105(a) citation (concerning the failure to use safety nets) and imposed a $50 fine. He also affirmed the section 1926.100(a) citation (concerning hard hats), but imposed no penalty.
 
 
 6
 The Commission subsequently reversed the ALJ's decision and vacated both citations. The Commission held, first, that section 1926.105(a) is not applicable to fall hazards in the steel erection industry because the steel erection standards, 29 C.F.R. Sec. 1926.750-.752 (Subpart R), are exclusive. The Commission also concluded that 29 C.F.R. Sec. 1926.100(a) does not require hard hats where employees merely "have access to" areas where they could suffer a head injury. Commissioner Cleary filed a vigorous dissent.
 
 
 7
 The Secretary now seeks review of the Commission's decision. We permitted intervention by the International Association of Bridge, Structural and Ornamental Iron Workers, AFL-CIO, and the Building and Construction Trades Department, AFL-CIO, in support of the Secretary's petition. The respondent, meanwhile, has filed no response to the Secretary's petition for review. Nonetheless, the respondent contested the Secretary's citations throughout the administrative proceedings and has yet to withdraw its contest of the citations. We thus conclude that "there is a continuing case or controversy warranting judicial review." Brennan v. Occupational Safety & Health Review Commission (Hanovia Lamp Division), 502 F.2d 946, 948 (3d Cir.1974).II.
 
 
 8
 The first issue before this court is whether the Commission erred in ruling that the steel erection standards are exclusively applicable to all fall hazards, including exterior falls from perimeter beams, in the steel erection industry. Our standard of review is whether the Commission's decision is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. Sec. 706(2)(A); see also Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971); Budd Co. v. Occupational Safety & Health Review Commission, 513 F.2d 201, 204 (3d Cir.1975).[3] To determine whether an agency has acted arbitrarily or abused its discretion, the reviewing court "must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." Volpe, 401 U.S. at 416, 91 S.Ct. at 814. It is settled that where an agency departs from established precedent without announcing a principled reason for such a reversal, its action is arbitrary, see Local 777, Democratic Union Organizing Committee v. NLRB, 603 F.2d 862, 872, 882 (D.C.Cir.1978), and an abuse of discretion, see Ameeriar v. INS, 438 F.2d 1028, 1039 (3d Cir.) (Gibbons, J., dissenting), cert. dismissed, 404 U.S. 801, 92 S.Ct. 21, 30 L.Ed.2d 34 (1971), and should be reversed.
 
 
 9
 A common starting point in cases of this type is the proposition that general safety standards are not "preempted for an entire industry simply because some specific standards for that industry have been promulgated." L.R. Willson & Sons, Inc. v. Donovan, 685 F.2d 664, 669 (D.C.Cir.1982); see also 29 C.F.R. Sec. 1910.5(c)(2). At stake here is a citation issued under a general construction industry safety standard, 29 C.F.R. Sec. 1926.105(a). This general standard requires that "[s]afety nets ... be provided when workplaces are more than 25 feet above the ground or water surface, or other surfaces where the use of ladders, scaffolds, catch platforms, temporary floors, safety lines, or safety belts is impractical." 29 C.F.R. Sec. 1926.105(a). The more particularized "structural steel erection industry" standards, the relevant parts of which are set out in the margin,[4] overlap the general standard in some respects. See, e.g., Donovan v. Williams Enterprises, Inc., 744 F.2d 170, 179 (D.C.Cir.1984) (noting that Commission vacated a section 1926.105(a) citation on ground that general standard was preempted by steel industry standards "with regard to the interior fall hazards"). A comparison of the standards, however, reveals that the specific hazard involved in this case, although covered by the general standard, is not addressed by the steel erection standards.
 
 
 10
 The particular hazard at issue here is the danger of an exterior fall from a perimeter beam. The general standard clearly requires the use of safety nets (where other means are impractical) to protect against this danger. The steel erection standards, however, do not deal with this particular hazard. Although the steel erection standards address interior falls, and exterior falls from temporary flooring, no section applies to exterior falls from perimeter beams. A review of the relevant provisions bears this out. First, section 1926.750(b)(2)(i)'s temporary flooring requirement is not applicable to exterior falls because, although temporary flooring may protect against interior falls, it provides no protection against exterior falls from perimeter beams. Second, the requirement for temporary flooring, scaffolds or safety nets in 29 C.F.R. Sec. 1926.750(b)(1)(ii) is not specifically applicable to exterior falls from perimeter beams because this standard applies only to interior falls. This is so because the standard requires temporary flooring as the preferred means of protection for the hazard covered and because an employer who provides temporary flooring is in complete compliance with the standard. See L.R. Willson & Sons, Inc., 685 F.2d at 671-72. Third, the requirement of a safety railing on temporary flooring in 29 C.F.R. Sec. 1926.750(b)(1)(iii) is not specifically applicable to exterior falls from perimeter beams because the safety railing provides protection only against exterior falls from temporary flooring. See id. at 673.
 
 
 11
 The Secretary, relying on the rule that a general standard is not preempted where no specific standard applies, see 29 C.F.R. Sec. 1910.5(c)(2), argues that the citation based on the general standard, 29 C.F.R. Sec. 1926.105(a), is proper because the more particularized steel erection standards are inapplicable to the specific danger at issue. The Commission, however, disagreed and vacated the citation. In the Commission's view, the Secretary's failure to specify in 29 C.F.R. Sec. 1926.750 (the particular standard) any requirements to protect against exterior falls from levels above the temporary flooring should be construed as a deliberate decision not to require such protection. In essence, the Commission saw section 1926.750(b) as preempting the field with respect to fall hazards in the steel erection industry. A contrary reading, according to the Commission, would result in "the application of general standards to situations that the Secretary has deliberately decided to leave unregulated, thereby impairing or even destroying the regulatory scheme developed in the rulemaking process." The Commission's position, however, is contrary to the regulations concerning the applicability of standards, Commission precedent, and the view of every court of appeals that has addressed this particular issue.
 
 
 12
 The Secretary's regulation on the applicability of standards provides that a general standard is preempted only "[i]f a particular standard is specifically applicable to a condition, practice, means, method, operation, or process." 29 C.F.R. Sec. 1910.5(c)(1). If, however, the particular standard does not specifically apply to the unsafe working conditions in question, then, under section 1910.5(c)(2), "any standard shall apply according to its terms to any employment and place of employment ..., even though particular standards are also prescribed for the industry." Thus, the general safety standards, such as section 1926.105(a), essentially "complement the specific safety standards ... by filling the interstices necessarily remaining after the promulgation of the specific standards." Dravo Corp. v. Occupational Safety & Health Review Commission, 613 F.2d 1227, 1234 (3d Cir.1980). As noted above, there is no particular standard that is specifically applicable to exterior falls from perimeter beams, the hazard at issue in this case. Given this situation, the regulations concerning the interrelationship of the standards compels the application of the general standard to the case before us.
 
 
 13
 The Commission itself had previously examined the very question that concerns us here and came to the conclusion that we reach, a conclusion contrary to the Commission's decision in these proceedings. In Williams Enterprises, Inc., 11 O.S.H.Cas. (BNA) 1410 (Rev.Comm'n 1983), the Commission held that the steel erection standards at section 1926.750(b) do not preempt the general standard, section 1926.105(a), with respect to exterior falls from perimeter beams. The court of appeals affirmed. See Donovan v. Williams Enterprises, Inc., 744 F.2d 170 (D.C.Cir.1984). The appellate court in Williams Enterprises, Inc. relied in part on L.R. Willson & Sons, Inc. v. Donovan, 685 F.2d 664, 673 (D.C.Cir.1982), an earlier decision of that court reaching a similar conclusion. See Williams Enterprises, Inc., 744 F.2d at 179. No court of appeals has reached a contrary result on the interrelationship between section 1926.105(a) and section 1926.750(b).
 
 
 14
 The Commission in this case explicitly overruled its Williams Enterprises, Inc. decision. In so doing, the majority relied on two appellate cases as well as the supposed intent of the Secretary. Neither, however, supports the Commission's position.
 
 
 15
 The two cases that the Commission relied upon, Daniel International Corp. v. Donovan, 705 F.2d 382 (10th Cir.1983), and Builders Steel Co. v. Marshall (Builders Steel II), 622 F.2d 367 (8th Cir.1980), are easily distinguishable from the instant case. In Daniel, the employer argued that the steel erection standards were not applicable to a power plant boiler building with a skeleton steel framework. The court rejected the argument because the building was a tiered building within the meaning of section 1926.750 and therefore the steel erection standards applied. Because the steel erection standards applied and required the installation of temporary flooring, the court did not "need to consider Daniel's arguments premised on the assertion that conditions at its worksite ought to be judged by general safety standards." 705 F.2d at 386. Thus, the court did not rule on the question of whether the steel erection standards preempt application of section 1926.105 with respect to exterior falls.
 
 
 16
 In Builders Steel II, the employer argued that the steel erection standards apply to single-story buildings. The court accepted the argument and ruled that the steel erection standards apply to single-story structures with heights of 30 feet or less and in such structures flooring, "whether it be temporary, a permanent wood or the concrete floor, or the ground is practical." 622 F.2d at 370. The fall hazard involved was an interior one, "a fall of over twenty-five feet to a concrete floor below." Builders Steel Co. v. Marshall (Builders Steel I), 575 F.2d 663, 665 (8th Cir.1978). As in Daniel, the court did not rule on the question presented by the instant case, i.e., whether section 1926.750(b) covers all exterior fall hazards and preempts application of section 1926.105(a).
 
 
 17
 Finally, the Commission stated that, although the Third Circuit has not ruled on the issue, "the Secretary has taken the position before the Third Circuit that the net requirement of section 1926.750(b) is more specifically applicable to steel erection and prevails over section 1926.105(a), an argument the court cited with approval. United States Steel Corp. v. OSHRC, 537 F.2d 780, 784 (3d Cir.1976)." The United States Steel Corp. case, however, involved an interior fall hazard and the Secretary based his assertion there on such a danger; section 1926.750(b) specifically applies to interior fall hazards. United States Steel Corp., therefore, is inapplicable to this case.
 
 
 18
 The Commission's wishful reliance on the supposed intent of the Secretary also is misplaced. In concluding that the Secretary intended to leave the hazard of exterior falls from perimeter beams totally unregulated, the Commission pointed to three standards found in sections 1926.750(b)(2)(i) and 1926.750(b)(1)(ii) & (iii) of Subpart R. As noted earlier, these three standards do not apply to the hazard under consideration here. Although the Commission's majority essentially concedes this, it nonetheless reasoned, on the basis of these inapplicable standards, that the Secretary in adopting Subpart R deliberated over the hazard of exterior falls from perimeter beams and decided not to require any form of fall protection for employees exposed to this hazard. We reject this reasoning; we agree with the dissent "that it would take a lot more evidence than that cited by the majority to convince [us] that the Secretary made a reasoned and deliberate decision" such as this.
 
 
 19
 Furthermore, there is convincing evidence that the Secretary did not intend the more rigorous standards enunciated in section 1926.105(a) to be preempted by the relaxed rules of Subpart R. First, the Occupational Safety and Health Act (the Act) requires that the Secretary, in adopting preexisting standards as OSHA standards, "promulgate the standard which assures the greatest protection of the safety or health of the affected employees." 29 U.S.C. Sec. 655(a). It must be presumed that the Secretary acted in accordance with this statutory mandate and did not adopt Subpart R with the purpose of diminishing the level of security provided by the general fall protection standards.
 
 
 20
 The Secretary's history of enforcement of the standards, as demonstrated by the numerous cases cited above, also provides convincing evidence of his objective. The Secretary's attempts to enforce the general fall safety standards in the steel erection industry, as well as his official statement of enforcement policy,[5] are clearly consistent with a laudable desire to have these safety standards supplement Subpart R. Thus, neither the Secretary's intent nor the cases cited by the Commission support the Commission's conclusion that section 1926.105(a)'s general requirement for fall protection is preempted by the steel erection standards. Its decision to overrule Williams Enterprises, Inc., therefore, has no merit.
 
 
 21
 In sum, the Commission's interpretation contradicts the legislative scheme which contemplates that general safety standards will supplement specific safety standards by filling those gaps necessarily remaining after the promulgation of specific standards. This view of the relationship of general and specific standards has been uniformly recognized by the courts, and indeed, by the Commission itself in Williams Enterprises, Inc. We perceive no reasoned basis for the Commission's decision to overrule established precedent and therefore conclude that it acted arbitrarily, see Local 777, Democratic Union Organizing Committee, 603 F.2d at 882, and that its "inexplicable departure from established policies" constitutes an abuse of discretion, see Ameeriar, 438 F.2d at 1039 (Gibbons, J., dissenting). Accordingly, its decision to vacate the first citation must be rejected. Accord Donovan v. Daniel Marr & Son Co., 763 F.2d 477 (1st Cir.1985).
 
 III.
 
 22
 The second issue that we consider is whether the Commission erred in holding that a violation of 29 C.F.R. Sec. 1926.100(a), prescribing the wearing of protective helmets, is established only when the Secretary proves actual employee exposure to the danger of head injury. The Secretary argues that this burden is not mandated by the standard, and that proof of access to an area of potential danger is sufficient to establish a violation. We agree.
 
 
 23
 As noted earlier, the Secretary cited the respondent for a non-serious violation of 29 C.F.R. Sec. 1926.100(a) by allowing five of its ironworkers to work without wearing hard hats. Section 1926.100(a) provides as follows:
 
 
 24
 Sec. 1926.100 Head Protection.
 
 
 25
 (a) Employees working in areas where there is a possible danger of head injury from impact, or from falling or flying objects, or from electrical shock and burns, shall be protected by protective helmets.
 
 
 26
 29 C.F.R. Sec. 1926.100(a) (1984).
 
 
 27
 Respondent admits that its employees were not protected by helmets. It argues, however, that there was no support in the record for the conclusion that any of its employees were ever actually exposed to the hazard of possible head injury and that, therefore, the citation was improper. The Commission agreed and vacated the citation. In so ruling, it concluded that a violation of section 1926.100(a) is established only when the Secretary proves actual employee exposure to the danger of head injury. Proof of access to a zone of danger is, in the Commission's opinion, insufficient. We disagree.
 
 
 28
 First, the Commission's ruling is contrary to both the plain language and the purpose of the standard. Section 1926.100(a) states that employees "working in areas where there is a possible danger of head injury from impact, or falling ... objects ... shall be protected by protective helmets." Thus, by its express language, the standard applies whenever employees are exposed to "a possible danger of head injury." (Emphasis added.) The standard's language does not require that employees actually be exposed to head injury.
 
 
 29
 This reading is in conformity with the purpose of the Occupational Safety and Health Act. The legislative history makes clear that "death and disability prevention is the primary intent" of the Act. H.R.Rep. No. 1291, 91st Cong., 2d Sess. 23 (1970), reprinted in Subcomm. on Labor of Senate Comm. on Labor and Public Welfare, 92d Cong., 1st Sess., Legislative History of the Occupational Safety and Health Act of 1970, at 853 (Comm.Print 1971) (emphasis added). The Act is remedial in nature and "does not wait for an employee to die or become injured. It authorizes the promulgation of health and safety standards and the issuance of citations in the hope that these will act to prevent deaths or injuries from ever occurring." Whirlpool Corp. v. Marshall, 445 U.S. 1, 12, 100 S.Ct. 883, 890, 63 L.Ed.2d 154 (1980). An interpretation by the Commission requiring that the Secretary observe an employee being directly exposed to a hazard, such as falling objects, is regressive; it offers protection too late to prevent injury. Imminent risk of injury or death to employees should not be required before the Secretary can compel protective action. See Gilles & Cotting, Inc., 3 O.S.H.Cas. (BNA) 2002 (Rev.Comm'n 1976).
 
 
 30
 An "access" test, as opposed to an "actual exposure" test, is also supported by every court of appeals that has considered the issue, as well as Commission precedent.[6] Although the cases we cite do not directly involve section 1926.100(a), they nevertheless address the same question presented by the application of section 1926.100(a) in this case: under what circumstances should an employer be held liable for failing to provide protection against an occupational hazard? Furthermore, the legal and policy reasons discussed in these cases apply with equal force to an interpretation of section 1926.100(a). Thus, the substantial judicial authority and Commission precedent cited serve as persuasive guides in interpreting this section.
 
 
 31
 On the basis of the cited cases, the language of the standard, and the clear import of the legislative scheme to prevent occupational deaths and serious injuries, we hold that "access," not exposure, to danger is the proper test. Therefore, the Commission abused its discretion in requiring proof of actual exposure; the Secretary need only prove that employees have access to an area of potential danger. We also conclude that, in the present case, there is substantial evidence to support the ALJ's finding of employee access to the danger. An employee on the third level was constantly in motion along the perimeter beam and back to the area where the bar joists were stacked. Two employees on the fourth level, ten feet above the third level, also were constantly in motion along the perimeter beams and back to the area in the interior of the building where materials were stored. Materials could have been dropped to the levels below, and thus the danger of injury from impact or falling objects was clearly present. The entire second floor and the entire third level of the building, then, constituted a "zone of danger" and it is undisputed that employees without hard hats had access to these areas.[7] Accordingly, we reverse the Commission's vacation of the section 1926.100(a) citation.
 
 IV.
 
 32
 For the foregoing reasons, the petition for review will be granted and the Commission's decision will be reversed. The proceedings will be remanded to the Commission with directions to reinstate both the ALJ's determination that the respondent violated 29 C.F.R. Secs. 1926.105(a) and 1926.100(a), and the penalty imposed.
 
 
 
 [1]
 This court has jurisdiction over this petition for review pursuant to Sec. 11(b) of the Occupational Safety and Health Act of 1970, 29 U.S.C. Sec. 660(b)
 
 
 [2]
 The serious citation also charged the Company with violating 29 C.F.R. Sec. 1926.28(a), a provision generally requiring the wearing of personal protective equipment. The Commission administrative law judge (ALJ) who held a hearing on the citations, however, discounted the OSHA compliance officer's contention that there were times when the employees on the perimeter beams were stationary and could tie off their lanyards to comply with Sec. 1926.28(a). Rather, the judge accepted the respondent's defense that the installation of static lines and the use of safety belts or lanyards would have subjected the ironworkers to a greater hazard than that posed by the possibility of falling if unprotected, and that such devices were therefore impractical. Accordingly, the ALJ concluded that respondent had not violated Sec. 1926.28(a). The Secretary never challenged the disposition of the Sec. 1926.28(a) charge and thus we do not consider it here
 The first citation also cited respondent for an alleged violation of 29 C.F.R. Sec. 1926.752(a) due to unsecured containers of bolts and masonry angles at the 40-foot level of the structure. The ALJ held that the Secretary failed to prove a violation of this section. The Secretary never challenged this ruling either, and it also will not be reviewed.
 
 
 [3]
 We are mindful that "we do not have an authoritative agency interpretation to assist us since the decisions of the Commission are themselves in conflict and inconsistent with the Secretary's position." Bethlehem Steel Corp. v. Occupational Safety & Health Review Comm'n, 573 F.2d 157, 160 (3d Cir.1978). In this situation, reliance on the "plain wording of the standard" has been deemed appropriate. Id; see also Marshall v. Pittsburgh-Des Moines Steel Co., 584 F.2d 638, 642 (3d Cir.1978). However, inasmuch as we look beyond the plain meaning of the standard (examining, for example, the Commission's unprincipled departure from established precedents), and because we conclude that, even under a narrow "abuse of discretion" standard, the Commission erred, we rely on the standard set forth in the text. In so doing, we need not determine whether the standard's "plain meaning" alone would be a sufficient basis on which to vacate the Commission's order. Furthermore, we need not determine, whether, as a general matter, the Commission's interpretation of a standard is entitled to deference over the Secretary's, because, even giving deference to the Commission's interpretation in this case, we conclude that its order must be vacated
 
 
 [4]
 The pertinent portions of the Sec. 1926.750 flooring requirements are:
 (b) Temporary flooring--skeleton steel construction in tiered buildings.
 (1)(i) The derrick or erection floor shall be solidly planked or decked over its entire surface except for access openings....
 (ii) On buildings or structures not adaptable to temporary floors, and where scaffolds are not used, safety nets shall be installed and maintained whenever the potential fall distance exceeds two stories or 25 feet....
 (iii) Floor periphery--safety railing. A safety railing of 1/2-inch wire rope or equal shall be installed, approximately 42 inches high, around the periphery of all temporary-planked or temporary metal-decked floors of tier buildings and other multifloored structures during structural steel assembly.
 (2)(i) Where skeleton steel erection is being done, a tightly planked and substantial floor shall be maintained within two stories or 30 feet, whichever is less, below and directly under that portion of each tier of beams on which any work is being performed.... Where such a floor is not practicable, paragraph (b)(1)(ii) of this section applies.
 
 
 [5]
 The Secretary's enforcement directive states that "[f]or all types of construction, including steel erection, exterior falling hazards shall be cited ... under 1926.105(a) when the potential falling distance is greater than 25 feet." OSHA Instruction STD 3-3.1 (July 18, 1983), paragraph G.3.b, reported at CCH ESHG, 1982-83 Developments p 12,855, at 17,166
 
 
 [6]
 See, e.g., Daniel International Corp. v. Donovan, 705 F.2d 382, 387-88 (10th Cir.1983) (29 C.F.R. Sec. 1926.500(d)(1) citation); Mineral Industries & Heavy Constr. Group v. Occupational Safety & Health Review Commission, 639 F.2d 1289, 1294 (5th Cir.1981) (29 C.F.R. Sec. 1962.602(a)(9)(ii) citation); Usery v. Marquette Cement Mfg. Co., 568 F.2d 902, 910 (2d Cir.1977) (citation for violation of "general duty clause" of Occupational Safety and Health Act, 29 U.S.C. Sec. 654(a)(1)); Brennan v. Occupational Safety & Health Review Commission and Underhill Construction Corp., 513 F.2d 1032, 1038-39 (2d Cir.1975) (citations under 29 C.F.R. Secs. 1926.250(b)(1) and 1926.500(d)(1)); Otis Elevator Co., 6 O.S.H.Cas. (BNA) 2048, 2050 (Rev.Comm'n 1978) (citation alleging noncompliance with three subsections of 29 C.F.R. Sec. 1926.500); Gilles & Cotting, Inc., 3 O.S.H.Cas. (BNA) 2002, 2003 (Rev.Comm'n 1976) (respondent cited for violations of the standards relating to scaffolding); cf. Babcock & Wilcox Co. v. Occupational Safety & Health Review Commission, 622 F.2d 1160, 1165 (3d Cir.1980)
 
 
 [7]
 The failure of the compliance officer to catch either of the two fourth-level employees directly above the third-level employee, on the verge of dropping a tool or some building materials onto his head, is irrelevant