United States Court of Appeals
Fifth Circuit

**F I L E D**

**July 23, 2004**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

No. 03-60511

TRINITY INDUSTRIES INC.,

Petitioner-Cross-Respondent,

versus

OCCUPATIONAL SAFETY AND HEALTH REVIEW COMMISSION;

Respondent

ELAINE CHAO, SECRETARY, DEPARTMENT OF LABOR,

Respondent-Cross-Petitioner,

Petition for Review from the
Occupational Safety and Health Review Commission
Docket No. 95-1597

Before SMITH, WIENER, and BENAVIDES, Circuit Judges.

PER CURIAM:[*]

Petitioner-Cross-Respondent, Trinity Industries Inc.
("Trinity"), petitions for review of a decision of the Occupational
Safety and Health Review Commission (the "Review Commission").
Trinity challenges the Review Commission's reinstatement and
affirmation of a citation charging Trinity with violating 29 C.F.R.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

§ 1915.14(a)(1)(i). By cross-petition, the Secretary of Labor (the "Secretary") (1) challenges the Review Commission's vacature of a citation for violating 29 C.F.R. § 1915.15(e), and (2) its decision to downgrade the characterization of Trinity's citation for violation of 29 C.F.R. § 1915.52(a)(2) from "willful" to "serious." As we conclude that the governing standard of review precludes any relief sought by either party, we deny each party's petition for review.

## I.  FACTS & PROCEEDINGS

Insofar as the issues before us are concerned, the relevant background facts are undisputed.  They are expressed in detail in the decision of the Review Commission,[1] so we do not restate them here.

## II.  ANALYSIS

Three citation items are the subject of the instant petitions. First, the Review Commission reinstated and affirmed citation Item 2e (dismissed earlier by the ALJ), charging Trinity with violating 29 C.F.R. § 1915.14(a)(1)(i).[2]  Trinity argues that (1) § 1915.14(a)(1)(i) is preempted by § 1915.53, which Trinity contends is the more specific —— and therefore prevailing —— governing regulation, and (2) that the terms of § 1915.14(a)(1)(i) do not

---

[1] Secretary of Labor v. Trinity Indus. Inc., 2002 O.S.H.D. (CCH) ¶ 32,666, at *1-3, 2003 OSAHRC LEXIS 44 (Apr. 26, 2003).

[2] Id. at *10-11.

2

apply to newly-constructed barges that have never contained a hazardous or unknown cargo. Second, the Review Commission vacated Item 2g, which charged Trinity with violating 29 C.F.R. § 1915.15(e) for failure to maintain safe conditions inside the transoms with proper retesting.[3] The Secretary seeks reinstatement of the § 1915.15(e) charge. Third, the Secretary cross-petitions the Review Commission's decision to downgrade from "willful" to "serious," citation Item 6a charging Trinity's with violating 29 C.F.R. § 1915.52(a)(2).

A.   STANDARD OF REVIEW

The Occupational Safety and Health Act of 1970 (the "OSH Act") establishes a comprehensive regulatory scheme designed "to assure so far as possible ... safe and healthful working conditions" for "every working man and woman in the Nation."[4]  In Trinity Marine Nashville, Inc. v. OSHRC, we explained the governing standard of review:

We are bound by the OSHRC's findings on questions of fact

---

[3] Id. at *11-12.

[4] 29 U.S.C. § 651(b).  Responsibilities for setting and enforcing workplace health and safety standards under the OSH Act are divided between the Secretary and the Review Commission.  The Secretary is responsible for setting and enforcing the standards, and the Review Commission carries out the "adjudicatory functions" of the OSH Act.  See Martin v. Occupational Safety and Health Review Com'n, 499 U.S. 144, 147-48 (1991).  See also id. at 151 (observing the "unusual regulatory structure established by the Act" because "[u]nder the OSH Act, however, Congress separated enforcement and rulemaking powers from adjudicative powers, assigning these respective functions to two different administrative authorities").

and reasonable inferences drawn from them if they are supported by substantial evidence on the record considered as a whole even if this court could justifiably reach a different result de novo. See H.B. Zachry Co. v. OSHRC, 638 F.2d 812, 815 (5th Cir. Unit A Mar.1981); 29 U.S.C. § 660(a). The OSHRC's legal conclusions are reviewed as to whether they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." See Corbesco, Inc. v. Dole, 926 F.2d 422, 425 (5th Cir. 1991); 5 U.S.C. § 706(2)(A).

We review the Secretary's interpretation of an OSHA regulation "to assure that it is consistent with the regulatory language and is otherwise reasonable." See Martin v. OSHRC, 499 U.S. 144, 156, 111 S. Ct. 1171, 113 L.Ed.2d 117 (1991) (emphasis in original).[5]

Our review of the Review Commission's order is therefore deferential, and a "reasonable" interpretation will be upheld "so long as the interpretation 'sensibly conforms to the purpose and wording of the regulations.'"[6] To the extent that a conflict exists between the interpretations of a regulation by the Review Commission and the Secretary, we must defer to the interpretation presented by the Secretary if it is reasonable.[7]

B.    ITEM 2E: 29 C.F.R. § 1915.14(A)(1)(I)

Section 1915.14(a)(1)(i) addresses hot work that requires testing by a Marine Chemist or Coast Guard-authorized person:[8]

---

[5] 275 F.3d 423, 426-27 (5th Cir. 2002).

[6] Martin, 499 U.S. at 151 (citations omitted).

[7] Id.

[8] "The term 'hot work' means riveting, welding, burning or other fire or spark producing operations." 29 C.F.R. § 1915.4(r). See also 29 C.F.R. § 1915.11(b) (defining "hot work" to include "any activity involving riveting, welding, burning, the use of

4

The employer shall ensure that hot work is not performed in or on any of the following confined and enclosed spaces and other dangerous atmospheres, boundaries of spaces or pipelines until the work area has been tested and certified by a Marine Chemist or a U.S. Coast Guard authorized person as "Safe for Hot Work":

Within, on, or immediately adjacent to spaces that contain or have contained combustible or flammable liquids or gases.

Trinity acknowledges that it did not have a Marine Chemist[9] test the spaces inside the barge transoms for explosive vapors, instead advancing two legal arguments to challenge the applicability of § 1915.14(a)(1)(i) to this case.

## 1. Preemption

Trinity argues first that § 1915.14(a)(1)(i) is preempted by 29 C.F.R. § 1915.53(e)(1), which states:

A competent person shall test the atmosphere in the space to ensure that it does not contain explosive vapors, since there is a possibility that some soft and greasy preservatives may have flash points below temperatures which may be expected to occur naturally. If such vapors are determined to be present, no hot work shall be commenced until such precautions have been taken as will ensure that the welding, cutting or heating can be performed in safety.[10]

---

powder-actuated tools or similar fire-producing operations").

[9] A "Marine Chemist" is "an individual who possesses a current Marine Chemist Certificate issued by the National Fire Protection Association." 29 C.F.R. § 1915.11(b).

[10] Part 1915.53 is titled "Welding, cutting and heating in way of preservative coatings," and § 1915.53(a) explains that "this section shall apply to all ship repairing, shipbuilding and shipbreaking operations except for paragraphs (e) and (f) of this section which shall apply to ship repairing and shipbuilding and shall not apply to shipbreaking."

5

Although Trinity did not have a Marine Chemist check the atmosphere inside the transoms, Michael Slavings, who is a "competent person," did do so.[11]

The OSH Act regulation addressing the preemption of a specific regulation over a general one is 29 C.F.R. § 1910.5(c):

> (1)  If a particular standard is specifically applicable to a condition, practice, means, method, operation, or process, it shall prevail over any different general standard which might otherwise be applicable to the same condition, practice, means, method, operation, or process.

> (2)  On the other hand, any standard shall apply according to its terms to any employment and place of employment in any industry, even though particular standards are also prescribed for the industry, as in subpart B or subpart R of this part, to the extent that none of such particular standards applies.

Circuit courts have interpreted § 1910.5(c) to mean that a general standard applies unless another standard is specifically applicable to the same hazard.[12]  If, however, the particular standard does not specifically apply to the hazard in question, then § 1910.5(c)(2) comes into play, and the general safety standard, "essentially 'complement[s] the specific safety standards ... by filling the interstices necessarily remaining after the promulgation of the

_____

[11] A "competent person" is defined in 29 C.F.R. § 1915.4(o). Section 1915.7(c) prescribes the skills and knowledge a "competent person" must have.

[12] See, e.g., Brock v. L.R. Willson & Sons, Inc., 773 F.2d 1377, 1380-81 (D.C. Cir. 1985); Donovan v. Adams Steel Erection, Inc., 766 F.2d 804, 807-09 (3d Cir. 1985). See also Peterson Bros. Steel Erection Co. v. Reich, 26 F.3d 573, 577 (5th Cir. 1994) (noting, without expressly adopting, the Brock and Donovan standard for preemption).

6

specific standard[].'"[13]    In other words, whether a specific standard <u>complements</u> a general standard or <u>preempts</u> it depends on whether the two regulations address precisely the same hazard.

Trinity insists that both § 1915.53 and § 1915.14(a)(1)(i) target the same hazard —— namely, the presence of explosive vapors prior to the commencement of hot work in spaces covered by a preservative.  If both standards apply, the same space has to be tested by both a Marine Chemist and a competent person.  Having a Marine Chemist gauge the vapors instead of or in addition to a competent person, contends Trinity, adds no additional protection because the newly-constructed barges at issue have never contained <u>any</u> cargo, much less cargo of unknown properties requiring the special skills of a Marine Chemist.

Trinity's interpretation that, for barges that have never contained cargo, § 1915.53 targets the same hazard as § 1915.14(a)(1)(i), is not unreasonable.  But we are constrained by the specified standard of review and must defer to the Review Commission's interpretation of the regulations as long as it is reasonable.[14]  The Review Commission determined that § 19.53 and § 1915.14(a)(1)(i) did not address the same hazard because the latter regulation requires marine chemist certification to ensure that an area was not only clear of gases generated by preservatives, but

---

[13] <u>Donovan</u>, 766 F.2d at 808.

[14] <u>See</u> <u>Martin</u>, 499 U.S. at 151.

7

also free of a wider range of fire hazards. Under Trinity Marine, even if Trinity's proffered interpretation is the more reasonable one, the deference commanded by our standard of review requires affirmance of the Review Commission's decision. We therefore affirm the Review Commission's preemption decision.

## 2. Inapplicable By Its Own Terms

The second challenge Trinity advances against the § 1915.14(a)(1)(i) citation is that, by its own terms, it does not apply to the facts of this case. In particular, the text of the regulation requires Marine Chemist testing and certification of spaces "[w]ithin, on or immediately adjacent to spaces that contain or have contained combustible or flammable liquids or gases."[15] Relying on the prior version of § 1915.14(a)(1)(i) and some of its legislative history, Trinity argues that the words "have contained" must be interpreted to mean "have carried as cargo." Although the spaces inside the transoms never contained flammable liquid or gas cargo, the Review Commission nevertheless affirmed the charge because the "the transoms of Barge B-133 clearly contained Stoddard solvent vapors, the gas produced during Tectyl's curing process."[16] Although Trinity has advanced a reasonable interpretation of § 1915.14(a)(1)(i) that is supported by the regulation's plain text, the Review Commission's interpretation and application is not

___

[15] § 1915.14(a)(1)(i) (emphasis added).

[16] 2002 O.S.H.D. (CCH) ¶ 32,666, at *4.

8

unreasonable. Therefore, <u>Trinity Marine</u> requires us to affirm the citation.

C.   ITEM 2G: VIOLATION OF § 1915.15(E)

By cross-petition, the Secretary challenges the Review Commission's vacature of the citation charging Trinity with failing to maintain safe conditions in violation of § 1915.15(e). Section 1915.15(e) requires testing "to maintain a competent person's findings":

> After a competent person has conducted a visual inspection and tests required in §§ 1915.12, 1915.13, and 1915.14 of this part and determined a space to be safe for an employee to enter, he or she shall continue to test and visually inspect spaces <u>as often as necessary</u> to ensure that the required atmospheric conditions within the tested space are maintained.[17]

The Secretary asserts that Trinity violated this provision because the welding <u>could have</u> altered conditions in the transoms,[18] and Trinity did not have a competent person <u>re</u>test the bulkheads of the barge "as often as necessary to ensure that the required atmospheric conditions within the space are maintained."[19]

The key issue is whether § 1915.15(e)'s requirement that an employer "continue to test ... as often as necessary" means that

_____

[17] 29 C.F.R. § 1915.15(e) (emphasis added).

[18] Importantly, the Secretary does not allege that the atmospheric conditions in the transoms <u>actually</u> changed because of the welding. Instead, because they <u>might have</u> changed, argues the Secretary, Trinity's failure to retest the atmospheric conditions was a willful violation of § 1915.15(e).

[19] <u>See</u> 2002 O.S.H.D. (CCH) ¶ 32,666, at *11.

Trinity was obligated to perform some additional testing above and beyond the initial test performed by its competent person. Although we must defer to the Secretary to the extent that its interpretation conflicts with that of the Review Commission,[20] the Secretary does not offer an interpretation that is reasonable in light of the language of the regulation. Section 1915.15(e)'s use of the language "as often as necessary" hinges on the professional judgement of the competent person. And, it would be perfectly sensible for a competent person to determine that no additional testing is "necessary." We therefore must deny the Secretary's cross-petition seeking reinstatement of the § 1915.15(e) citation.

D.    ITEM 6A: § 1915.52(A)(2): WILLFUL OR SERIOUS

Finally, the Secretary contends that the Review Commission erred in downgrading the characterization of the Item 6a citation, based on § 1915.52(a)(2), from "willful" to "serious."[21] The OSH Act authorizes its most severe civil penalties for an employer who "willfully" violates a health or safety standard.[22] The regulation in question relates to fire prevention measures for hot work:

> If the object to be welded, cut or heated cannot be moved and if all the fire hazards including combustible cargoes cannot be removed, positive means shall be taken to confine the heat, sparks, and slag, and to protect the

---

[20] Martin, 499 U.S. at 151.

[21] See 2002 O.S.H.D. (CCH) ¶ 32,666, at *21.

[22] 29 U.S.C. § 666(a).

10

immovable fire hazards from them.[23]

The Review Commission affirmed this citation Item as a "serious" violation because Trinity had not installed fire restraint tarpaulins under the welding to prevent sparks from falling onto the Tectyl-coated floor of the transom, and Trinity's own competent person had recognized the need for tarpaulins or shields.[24]

## 1. Defining "Willful" Violation

The OSH Act does not itself define "willful." But Trinity and the Secretary generally agree that, for OSHA purposes, "a willful violation as one involving voluntary action, done either with an intentional disregard of, or plain indifference to, the requirements of the statute."[25] A company's "indifference to OSHA requirements, coupled with its disregard for the safety of its employees, support[] a finding of a willful violation of the OSHA regulation."[26] Recently, in A.E. Staley Mfg. Co. v. Secretary of Labor, the D.C. Circuit agreed with the Secretary that a showing of "plain indifference" to a violation of the OSH Act is an alternative to "knowing or voluntary disregard" (also referred to

---

[23] 29 C.F.R. § 1915.52(a)(2) (emphasis added).

[24] 2002 O.S.H.D. (CCH) ¶ 32,666, at *17 & n.21.

[25] Georgia Elec. Co. v. Marshall, 595 F.2d 309, 318 (5th Cir. 1979). In contrast, to prove a "serious" violation, the Secretary must show only "the presence of a 'substantial probability' that a particular violation could result in death or serious physical harm. Whether the employer intended to violate an OSHA standard is irrelevant." Id.

[26] Id. at 319.

as "conscious disregard"); thus, willfulness can be inferred from evidence of plain indifference <u>without</u> direct evidence that the employer knew of each individual violation.[27] At the same time, though, "[a] company cannot be found to have willfully violated a standard if it exhibited a good faith, reasonable belief that its conduct conformed to law, or if it made a good faith effort to comply with a standard or eliminate a hazard."[28]

## 2. The Evidence

Here, the Review Commission reversed the ALJ's conclusion that Trinity's violation of § 1915.52(a)(2)'s fire prevention requirement was willful. The Review Commission did so after finding no evidence that the entry supervisor who authorized the violation, Rodney Quinn, knew that his action violated OSHA standards, or that he was "indifferent to the safety of his welding crew."[29] This conclusion was grounded in the fact that, although Trinity failed to use fire restraint tarpaulins to prevent sparks

---

[27] 295 F.3d 1341, 1351, 1353 (D.C. Cir. 2002).

[28] American Wrecking Corp. v. Secretary of Labor, 351 F.3d 1254, 1263 (D.C. Cir. 2003) (citations omitted). See also id. at 1264 ("Mere negligence or lack of diligence is not sufficient to establish an employer's intentional disregard for or heightened awareness of a violation.").

[29] 2002 O.S.H.D. (CCH) ¶ 32,666, at *20 ("[T]here is no evidence that entry supervisor Rodney Quinn knew that welding without tarpaulins, drapes, or shields was in violation of OSHA standards. We also find no evidence that Quinn was indifferent to the safety of his welding crew. Quinn testified that crew members equipped themselves with blowers, respirators, and fire extinguishers before they entered Barge B-133 and that each welder was paired with a fire watch.").

12

from falling onto the Tectyl-coated floor of the transoms, Trinity's welding crew employed alternate means —— including the use of ventilators, respirators, and fire extinguishers, as well as the pairing of each welder with a fire watch —— to protect themselves from the fire hazards. The Secretary nevertheless asserts that these were measures required by separate OSH Act regulations, so they cannot shield Trinity from being in willful violation of § 1915.52(a)(2)'s mandates.

**3. The Secretary Has Not Met Her Burden**

Although it is true that, as Trinity acknowledged, it did not use fire restraint tarpaulins, for the Secretary to prevail on the plain indifference theory, she had to show that Trinity (1) was indifferent to OSH Act requirements and (2) disregarded the safety of its employees.[30] We are bound by the Review Commission's findings of fact because they are supported by substantial evidence. The Secretary has not shown that Trinity disregarded the safety of its employees, and nothing in the record supports a finding that Trinity acted in bad faith.[31] We therefore find no reversible error in the Review Commission's affirmation of the § 1915.52(a)(2) citation as a serious violation rather than a willful one.

### III. CONCLUSION

---

[30] <u>Georgia Elec. Co.</u>, 595 F.2d at 319.

[31] See <u>American Wrecking</u>, 351 F.3d at 1263-64.

13

For the foregoing reasons, Trinity's and the Secretary's petitions for review are DENIED.