Filed 11/13/23  Granite Construction Co. v. Occupational Safety and Health Appeals Bd. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| GRANITE CONSTRUCTION COMPANY, GRANITE INDUSTRIAL, INC., | C096704 |
| Plaintiff and Appellant, | (Super. Ct. No. 34-2021-80003634-CU-WM-GDS) |
| v. | |
| OCCUPATIONAL SAFETY AND HEALTH APPEALS BOARD, | ORDER DECERTIFYING PUBLICATION, MODIFYING OPINION, AND DENYING PETITIONS FOR REHEARING |
| Defendant and Respondent; | |
| DEPARTMENT OF INDUSTRIAL RELATIONS, DIVISION OF OCCUPATIONAL SAFETY AND HEALTH, | [NO CHANGE IN JUDGMENT] |
| Real Party in Interest and Respondent. | |

1

THE COURT:

The opinion filed September 25, 2023, was not certified for publication. Appellant subsequently requested the opinion be published, and an order granting publication was filed on October 16, 2023. On the court's own motion, the October 16, 2023, published opinion is to be depublished.

Respondent Occupational Safety and Health Appeals Board and Real Party in Interest and Respondent Department of Industrial Relations, Division of Occupational Safety and Health each filed a petition for rehearing with this court. It is hereby ordered that the petitions for rehearing are denied.

It is also ordered that the opinion filed herein on September 25, 2023, be modified as follows:

1. Starting at the bottom of page 4 and continuing to the top of page 5, the last two sentences in the last paragraph that begin with: "No evidence in the record shows" are deleted and the following sentence is inserted in its place:

   No evidence that the parties have cited, nor any evidence that the Board discussed in its decision, shows that anyone who visited the worksite contracted Valley fever.

2. On page 11, the last sentence of the first full paragraph starting with "And as the ALJ noted here" is deleted and the following sentence is inserted in its place:

   And in this case, no evidence that the parties have cited, nor any evidence that the Board discussed in its decision, shows that anyone who visited the worksite was exposed to *Coccidioides*.

3. On page 11, the last three sentences including the citation of the last paragraph starting with "But those considerations only show that the worksite was a potential zone of danger" are deleted and the following sentences are inserted in their place:

   But those considerations are not enough to find that the employees were exposed or had access to a zone of danger. According to the Board, the "zone of danger

2

is that area surrounding the violative condition that presents the danger to employees that the standard is intended to prevent." (*Benicia Foundry & Iron Works, Inc., supra*, 2003 CA OSHA App.Bd. Lexis 43 at p. *54 [adopting standing from federal authorities].)  But here, the facts show only a possibility of a violative condition, not an actual violative condition, nor even a likely violative condition.

4. On page 12, the first sentence of the first paragraph reading:  Here, however, nothing we have found in the record shows that any part of the worksite "present[ed] [a] danger to employees." is deleted in its entirety.

5. On page 13, the fifth sentence in the first full paragraph starting with "But again, the relevant standard is not focused on exposure or access to a potential zone of danger" is modified to now read:

> But again, the relevant standard is not focused on the possibility of a violative condition; it is instead focused on the existence of a violative condition that presents a danger to employees—and the evidence fails to establish the existence of such a condition here.  (See *Daniel Internat. Corp. v. Donovan* (10th Cir. 1983) 705 F.2d 382, 388 [one prerequisite to establish exposure is "the existence of the hazardous condition"]; see also *Bergelectric Corp. v. Secretary of Labor* (9th Cir. 2019) 925 F.3d 1167, 1172 [the " ' "inquiry is not simply into whether exposure is theoretically possible" ' "].)

6. On page 14, at the end of the fifth sentence in the first full paragraph, after the sentence ending "at two solar power facilities in San Luis Obispo County, not Monterey County," add as footnote 3 the following footnote, which will require renumbering of all subsequent footnotes:

> **3** In a petition for rehearing, the Division attempts to provide additional citations to the record to show confirmed cases of Valley fever.  But a party cannot wait until a petition for rehearing to reveal the relevant facts.  As courts have often said, " '[m]atters raised for the first time in a petition for rehearing are deemed waived.' " (*EpicentRx, Inc. v. Superior Court* (2023) 95 Cal.App.5th 890, 909,

3

fn. 9; *Wells Fargo Bank v. Neilsen* (2009) 178 Cal.App.4th 602, 607, fn. 1.) Respondents, not just appellants, are held to this standard. (*EpicentRx, Inc.,* at p. 909, fn. 9; cf. *Sharabianlou v. Karp* (2010) 181 Cal.App.4th 1133, 1149 [reversing a monetary setoff for insufficient evidence after noting it had no obligation to "scour the record on [its] own in search of supporting evidence" and finding respondents failed to cite supportive evidence].)

7.  On page 14, at the end of the seventh sentence in the first full paragraph, after the sentence ending "Valley Fever outbreak among workers constructing a solar power farm in Monterey County," add as footnote 4 the following footnote, which will require renumbering of all subsequent footnotes:

    [4] In their petitions for rehearing, the Division and the Board note that the CDC article cites nine URLs as references, and one of these URLs is to a Division news release that concerns the project here. They then argue that this news release should itself be considered part of the record. But this news release is not in fact part of the record. And to the extent the parties seek to augment the record for the first time on appeal in a petition for rehearing, we decline to grant this request. The Division separately argues that the solar farm discussed in the CDC article is the same size (3,000 acres) and general location (southeastern Monterey) as the worksite here, and so, it says, we should conclude that it concerns the worksite here. Maybe it is true that Monterey County has only one solar farm of this size and general location. But no one, as far as the parties have shown, testified on this topic, and we decline to speculate on this matter.

8.  At the top of page 15, at the end of the first full sentence on the page ending "we find that its own expert assumed that a test existed to test for the presence of *Coccidioides* in the soil," add as footnote 5 the following footnote, which will require renumbering of all subsequent footnotes:

    [5] In its petition for rehearing, the Division attempts to provide the missing citation about the difficulty of testing for *Coccidioides*. But again, parties must provide the relevant citations to the record up front, not reserve them for a petition for

4

rehearing.  (See Cal. Rules of Court, rule 8.204(a)(1)(C) [each brief must "[s]upport any reference to a matter in the record by a citation to the volume and page number of the record where the matter appears"].)

9. On page 15, the last sentence of the first paragraph starting with "And the 'zone of danger' standard requires an area that presents" is deleted and replaced with the following sentence, including the addition of footnote 6, which will require renumbering of all subsequent footnotes:

> And the "zone of danger" standard requires a violative condition that presents a danger to employees, not such a violative condition except when it is difficult to prove the existence of this condition.[6]
>
> [6] In its petition for rehearing, the Board asks for guidance on whether a violation could be established when a violative condition is likely present but cannot be confirmed.  We find it unnecessary to address this issue.  We conclude only that it is not enough to speculate that a violative condition exists.

FOR THE COURT:


    /s/
RENNER, Acting P. J.


    /s/
KRAUSE, J.


    /s/
BOULWARE EURIE, J.

Filed 9/25/23  Granite Construction Co. v. Occupational Safety and Health Appeals Bd. CA3 (unmodified opinion)

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| GRANITE CONSTRUCTION COMPANY, GRANITE INDUSTRIAL, INC., | C096704 |
| Plaintiff and Appellant, | (Super. Ct. No. 34-2021-80003634-CU-WM-GDS) |
| v. | |
| OCCUPATIONAL SAFETY AND HEALTH APPEALS BOARD, | |
| Defendant and Respondent; | |
| DEPARTMENT OF INDUSTRIAL RELATIONS, DIVISION OF OCCUPATIONAL SAFETY AND HEALTH, | |
| Real Party in Interest and Respondent. | |

The Department of Industrial Relations, Division of Occupational Safety and Health (the Division) is a state agency authorized to issue citations to employers for workplace safety violations.  In this case, it issued a citation to Granite Construction

1

Company/Granite Industrial, Inc. (Granite Construction) for allegedly violating three regulations relevant here. It alleged Granite Construction violated one regulation because it required its employees to wear masks without first providing a medical evaluation to determine their fitness to wear them. And it alleged the company violated two other regulations because it exposed its employees to dust containing a harmful fungus— namely, *Coccidioides*, the fungus that causes Valley fever—and failed to implement adequate measures to limit this exposure.

After Granite Construction disputed these allegations, an administrative law judge (ALJ) rejected the Division's claims. The ALJ reasoned that no credible evidence showed that Granite Construction required its employees to wear masks and no reliable evidence showed that *Coccidioides* was present at the worksite. But after the Division petitioned for reconsideration, the Occupational Safety and Health Appeals Board (the Board) reversed on these issues and ruled for the Division. The trial court later denied Granite Construction's petition for writ of administrative mandate seeking to set aside the Board's decision.

On appeal from the trial court, we reverse. We agree with Granite Construction's claim that insufficient evidence shows its employees were exposed to *Coccidioides*. But we reject its additional claim that it allowed (rather than required) its employees to wear masks, finding sufficient evidence supports the Board's contrary ruling on this point. We will direct the trial court to enter a new judgment granting Granite Construction's petition in part.

BACKGROUND

I

*Factual Background*

Much of the information about Valley fever in the record comes from government publications. One example is a Department of Industrial Relations webpage on Valley fever. According to the webpage, Valley fever is a potentially fatal disease caused by the

2

fungus *Coccidioides*.[1]  The webpage states that *Coccidioides* lives in the top two to 12 inches of soil in many parts of the state and can become airborne (and cause illness to those exposed) when this soil is disturbed.  It adds that "[w]hile the fungal spores are more likely to be present in the soils of the Central Valley, they may also be present in other areas of California."  A map included in the webpage shows eight counties with annual Valley fever rates over 10 per 100,000 residents and many more with rates between 1 and 10 per 100,000 residents.  Those with higher rates are Fresno, Kern, Kings, Madera, Merced, San Luis Obispo, Tulare, and, most relevant here, Monterey.  A separate publication, from the Centers for Disease Control and Prevention (CDC), describes *Coccidioides* as "endemic in the southwestern United States, including California."

The California Flats Solar Project is a large solar power plant built on part of a former cattle ranch in the southeastern corner of Monterey County.  Before the project's installation, and as a condition of project approval, the Monterey County Planning Department required the project applicant to take several measures intended to prevent the potential spread of Valley fever.  These measures included requiring the project applicant to prepare a Valley fever management plan that, among other things, would have specific measures to reduce the potential for exposure to Valley fever; to implement additional dust suppression measures under certain windy or hot conditions; and to develop an educational handout about Valley fever for on-site workers and nearby residents.  The Monterey County Planning Department also required the primary project

---

[1] The webpage states that Valley fever is caused by the fungus *Coccidioides immitis*, though other sources say Valley fever is actually caused by both *Coccidioides immitis* and *Coccidioides posadasii*, with the former being the primary pathogen in California. We will use the term *Coccidioides* to refer to both *Coccidioides immitis* and *Coccidioides posadasii*.

contractor to prepare and implement a worker training program about Valley fever before any grading activity.

Consistent with these requirements, the owner of the project site created a Valley fever fact sheet, a Valley fever training program, and a Valley fever management plan for the project. The project general contractor, in turn, created a safety plan that identified Valley fever as a potential risk and described methods for mitigating this risk, noting, for instance, that workers can stop working if concerned about the potential presence of *Coccidioides* and request a filtering facepiece respirator. Granite Construction, one of the project subcontractors, also discussed Valley fever in safety instructions to its employees. It noted, for example, the potential risk of Valley fever and instructed its employees to "use mask if needed." It also prepared a form (called a Job Hazard Analysis) that mentioned dust as a potential hazard from the use of a compactor and, as a control, instructed employees to keep material wet with an onsite water truck and, when dust is present, "[a]pply N95 dust mask"—a mask designed to block at least 95 percent of very small (0.3 micron) particles. It further mentioned dust as a potential hazard from backfilling and, as a control, instructed employees to keep distance to avoid dust from backfilling, apply water with an onsite water truck, and "[u]se N95 dust mask if necessary." According to two of Granite Construction's employees (Kayne Goff and Omar Cervantes), moreover, Granite Construction directed its employees to wear N95 masks when it was dusty.

In May 2017, the Division began an inspection of the project worksite, which ultimately centered on the potential exposure of Granite Construction's employees to *Coccidioides*. During their site visits, Division staff did not wear respiratory protection to prevent their own potential exposure to *Coccidioides*. Nor did they test the site for *Coccidioides*, though staff assumed that tests were available to determine the presence of the fungus. No evidence in the record shows that any Granite Construction employee

4

contracted Valley fever. Nor does any testimony show that any person who visited the worksite contracted Valley fever.

## II

### *Procedural Background*

Several months after the inspection, the Division issued a citation to Granite Construction. (See Lab. Code, § 6317 [discussing the Division's authority to issue citations].) It alleged three violations relevant here. First, it alleged Granite Construction required its employees to wear respirators without first providing a medical evaluation to determine their fitness to wear a respirator, in violation of California Code of Regulations, title 8, section 5144, subdivision (e)(1) (section 5144(e)(1)).[2] Second, it alleged the company failed to implement proper procedures to prevent exposure to *Coccidioides* during dust-generating activities and while working in dusty, windy environments, in violation of section 1509, subdivision (a). And third, it alleged the company failed to require its employees to wear respirators "when effective engineering controls were not feasible, or while they were being instituted, to protect against exposure to harmful dust contaminated with coccidioides fungal (Valley Fever) spores during . . . dust-generating activities and while working in dusty windy environments," in violation of section 5144, subdivision (a)(1) (section 5144(a)(1)).

Granite Construction disputed these allegations, and, following briefing and a hearing, an ALJ rejected the Division's claims. (See Lab. Code, § 6600 et seq. [describing the administrative process for appealing a Division citation].) Rejecting the alleged violation of section 5144(e)(1), the ALJ found no credible evidence that Granite Construction required its employees to wear respirators, finding respirator use to instead be voluntary. And rejecting the alleged violations of sections 1509 and 5144(a)(1), the

---

[2] Further undesignated regulation references are to title 8 of the California Code of Regulations.

5

ALJ found no reliable evidence that Granite Construction exposed its employees to *Coccidioides*, explaining that although the fungus is present in parts of Monterey County, no reliable evidence showed it was present at the worksite here. The ALJ added that no one contracted Valley fever during the six months before the Division's citations, no one sampled for *Coccidioides* at the worksite, and no Division employee even showed a personal concern for the fungus during the inspections, as evidenced by their not wearing respirators. The ALJ concluded that the presence of *Coccidioides* could not merely be assumed. And even if *Coccidioides* was assumed to be present, the ALJ found the Division's allegations would still fall short. That was because Granite Construction took adequate measures to prevent exposure to *Coccidioides* and the Division did not prove, in any event, that any respirator would have been effective to filter out *Coccidioides*.

After the Division petitioned for reconsideration, the Board reversed the ALJ's decision on these issues. Starting with section 5144(a)(1), the Board found Granite Construction exposed its employees to harmful dust (here, dust contaminated with *Coccidioides*), failed to use accepted engineering control measures as far as feasible to prevent exposure, and failed to require respirators when appropriate, instead "deci[ding] to leave virtually unlimited discretion regarding mask usage to employees." The Board concluded that Granite Construction violated section 5144(a)(1) as a result. It also found Granite Construction violated section 1509, subdivision (a) for similar reasons, reasoning that it exposed its employees to *Coccidioides* and failed to impose adequate measures to protect its employees. Lastly, it found the company violated section 5144(e)(1). Appearing to backtrack from its finding that Granite Construction "deci[ded] to leave virtually unlimited discretion regarding mask usage to employees," the Board now found Granite Construction "had a rule requiring employees to wear or use the masks under dusty or windy conditions." And because Granite Construction never evaluated its employees' fitness to wear these required masks, the Board found it consequently violated section 5144(e)(1).

6

Granite Construction afterward filed a petition for writ of administrative mandate in the trial court, seeking to have the court set aside the Board's decision. But the court found none of Granite Construction's arguments persuasive and denied the petition.

Granite Construction timely appealed.

DISCUSSION

I

*Scope of Review*

The scope of our review, like the trial court's, is limited. (See *Lusardi Construction Co. v. California Occupational Safety & Health Appeals Bd.* (1991) 1 Cal.App.4th 639, 643 ["Our function on appeal is the same as that of the trial court in ruling on the petition for the writ"].) Per Labor Code section 6629, our review "shall not be extended further than to determine, based upon the entire record which shall be certified by the appeals board, whether: [¶] (a) The appeals board acted without or in excess of its powers. [¶] (b) The order or decision was procured by fraud. [¶] (c) The order or decision was unreasonable. [¶] (d) The order or decision was not supported by substantial evidence. [¶] (e) If findings of fact are made, such findings of fact support the order or decision under review."

In evaluating whether the Board's decision was supported by substantial evidence, "[w]e view the evidence in a light most favorable to the Board's decision, drawing all reasonable inferences and resolving all conflicts in the evidence in favor of the decision." (*Teichert Construction v. California Occupational Safety & Health Appeals Bd.* (2006) 140 Cal.App.4th 883, 888.) Under this standard, we will uphold the Board's decision if the record contains sufficient evidence that is reasonable, credible, and of solid value to allow a reasonable person to reach the challenged decision. (*People v. Barnwell* (2007) 41 Cal.4th 1038, 1052 [describing substantial evidence standard].)

7

## II

### *Section 5144(a)(1)*

Granite Construction first challenges the Board's finding that it violated section 5144(a)(1)—a finding, again, that was largely premised on the Board's conclusion that the company exposed its employees to *Coccidioides*. Granite Construction contends the Board lacks authority to regulate exposure to *Coccidioides* and, even if it has this authority, it could not find a violation of section 5144(a)(1) on the facts of this case, in part because no evidence showed *Coccidioides* was present at the worksite here. We agree with its latter argument.

Section 5144(a)(1) states: "In the control of those occupational diseases caused by breathing air contaminated with harmful dusts, fogs, fumes, mists, gases, smokes, sprays, or vapors, the primary objective shall be to prevent atmospheric contamination. This shall be accomplished as far as feasible by accepted engineering control measures (for example, enclosure or confinement of the operation, general and local ventilation, and substitution of less toxic materials). When effective engineering controls are not feasible, or while they are being instituted, appropriate respirators shall be used pursuant to this section."

The Board has interpreted section 5144(a)(1) to require the Division to show four things to establish a violation: (1) the Division's citation concerned an atmospheric contaminant covered under section 5144(a)(1) (e.g., harmful dusts), (2) one or more of the employer's employees were exposed to that contaminant, (3) the employer failed to use accepted engineering control measures as far as feasible to prevent atmospheric contamination, and (4) when effective engineering controls were not feasible to prevent atmospheric contamination, or while being instituted, appropriate respirators were not used. Because no party disputes this interpretation, we accept for purposes here that these are the applicable elements to establish a violation of section 5144(a)(1).

Our focus here is on the second of these elements—that is, the one concerning employee exposure to an atmospheric contaminant covered under section 5144(a)(1). Over the years, the Board has discussed two competing standards for evaluating whether an employee has been exposed to an atmospheric contaminant within the meaning of this regulation. It established the first standard—the "harmful exposure" standard—decades ago. Under this standard, the Division must show " '[a]n exposure to dusts, fumes, mists, vapors, or gases . . . [o]f such a nature by inhalation as to result in, or have a probability to result in, injury, illness, disease, impairment, or loss of function.' " (*Papich Construction Co., Inc.* (Cal. OSHA, Mar. 26, 2021, No. 1236440) 2021 CA OSHA App.Bd. Lexis 23, *13, *18.) Evaluating an alleged harmful exposure in a 1978 decision, the Board found the Division could not establish a violation unless it showed actual exposure to some harmful dust, fume, mist, vapor, or gas. (*Interior Contractors* (Cal. OSHA, Apr. 7, 1978, No. 75-R3D1-1214) 1978 CA OSHA App.Bd. Lexis 40.) Although in that case, the Division argued workers had been exposed to dust containing asbestos, the Board found "there [wa]s a total absence of any evidence that the workers were exposed to any specific level of asbestos fibers, only an assumption that they were exposed to some unknown level of dust that likely contained asbestos." (*Id.* at pp. *2-*3.) "Such evidence," the Board concluded, "is not sufficient to sustain an alleged violation of [section] 5144(a)." (*Id.* at p. *3.)

The Board has since suggested that an alternative standard—the "zone of danger" standard—might be more appropriate in evaluating alleged violations of section 5144(a)(1). (*Papich Construction Co., Inc., supra*, 2021 CA OSHA App.Bd. Lexis 23 at p. *13.) Under this alternative standard, the Division must show either "that the employees have been or are in the zone of danger" or " 'that it is reasonably predictable by operational necessity or otherwise, including inadvertence, that employees have been, are, or will be in the zone of danger.' " (*Ibid.*) The Board has generally applied this standard in contexts involving regulations other than section 5144. It first appears to

9

have done so in 2003, finding an employer exposed its employees to a zone of danger when it had on its premises a torch and welding machine lacking required safety protections. (*Benicia Foundry & Iron Works, Inc.* (Cal. OSHA, Apr. 24, 2003, No. 00-R2D2-2976 through 2984, 2986, 2987) 2003 CA OSHA App.Bd. Lexis 43, *59-*61.) Although the employer argued the Division needed to show that its employees actually used this machine, the Board found persuasive the rationale that it should be able to require the abatement of dangerous conditions " 'upon a showing that a condition exists at a worksite in violation of a safety standard and the hazard posed by the violation is accessible to employees . . . or that the hazard otherwise may pose dangers to employees that may be described in functional rather than spatial terms.' " (*Id.* at pp. *54-*57.)

To date, the Division has yet to decide which of these two standards—the "harmful exposure" standard or the "zone of danger" standard—is the appropriate one in cases involving alleged violations of section 5144(a)(1). It has instead, in each case it has considered these standards, found it unnecessary to decide between the two standards because it concluded that both favor the same result. (See *Papich Construction Co., Inc., supra*, 2021 CA OSHA App.Bd. Lexis 23 at pp. *13.) In its decision here, for example, the Board noted that the "harmful exposure" standard is the one it has applied in past decisions involving section 5144(a)(1). But at the same time, it noted it might have reason to "overrule" this approach and apply the "zone of danger" standard—which it characterized as its "typical exposure analysis." In the end, though, the Board wrote that it "need not resolve the issue at this juncture as the issue is not dispositive and employee exposure exists under either of the mentioned standards."

We too need not resolve here which of these standards, if any, is best. We instead accept for purposes here that one of these standards applies—which no party disputes—and conclude that under either standard, the Board's finding that employees were exposed to dusts containing *Coccidioides* lacks evidentiary support. In other words, no matter the standard used, and no matter how generously we view the evidence, the

10

evidence does not support the Board's finding that the Division established the second element for the alleged violation of section 5144(a)(1). (See Lab. Code, § 6629, subd. (d).)

We start with the "harmful exposure" standard. The Board concluded this standard was satisfied here because "inhalation of the cocci spores will result in, or has a probability to result in, injury, illness, disease, impairment, or loss of function." But under the relevant standard, the Division had to show more than that *Coccidioides* can be harmful if inhaled; it also had to show that Granite Construction's employees were exposed to this fungus. After all, the "harmful exposure" standard requires " '[a]n exposure' " to a harmful substance, not simply an evaluation of a harmful substance that may or may not have been present. (*Papich Construction Co., Inc., supra*, 2021 CA OSHA App.Bd. Lexis 23 at p. *18.) And as the ALJ noted here (before the Board reversed his decision), the record is void of evidence showing any employee was exposed to "even one cocci spore during the six months prior to issuance of the citation."

We turn next to the "zone of danger" standard. In its decision, the Board suggested the worksite here was a "zone of danger" because *Coccidioides* exists and is endemic in Monterey County, Monterey County has taken steps to reduce the spread of Valley fever through mitigation measures covering the worksite, and Granite Construction itself had informed its employees about Valley fever and described methods for limiting dust exposure. But those considerations only show that the worksite was a potential zone of danger, not an actual zone of danger. And according to the Board's own description of the "zone of danger" standard, the standard requires an actual zone of danger. In the Board's words, the "zone of danger is that area surrounding the violative condition *that presents the danger to employees* that the standard is intended to prevent," not the area that *might* present a danger to employees. (*Benicia Foundry & Iron Works, Inc., supra*, 2003 CA OSHA App.Bd. Lexis 43 at p. *54, italics added.)

11

Here, however, nothing we have found in the record shows that any part of the worksite "present[ed] [a] danger to employees." The CDC, to be sure, has said *Coccidioides* is endemic in California. But that does not mean that the fungus is present everywhere in the state (or for that matter, everywhere in Monterey County)—which even Division staff conceded. The Department of Industrial Relations, moreover, has indicated that Monterey County and seven other counties have relatively high rates of Valley fever, with rates over 10 per 100,000 people. But that does not mean that *Coccidioides* was present (or even likely present) at the worksite here. Nor does it even show a meaningful probability that the fungus was present. And although Monterey County and even Granite Construction demonstrated concerns about Valley fever and took steps to limit potential exposure, that too does not show that *Coccidioides* was actually present. All this evidence instead only shows, with no degree of certainty, that the worksite might have presented a danger to employees because *Coccidioides* might have been present in the soil. That, however, is insufficient to support the Board's finding that the worksite was in fact a zone of danger. (*People v. Davis* (2013) 57 Cal.4th 353, 360 [" ' "A finding of fact must be an inference drawn from evidence rather than . . . a mere speculation as to probabilities without evidence" ' "].) Neither of the Board's offered standards, then, favor its finding that "one or more of [Granite Construction's] employees were exposed to harmful dusts"—which again, per the Board's own interpretation, is one of the required elements to establish a violation of section 5144(a)(1).

Nor are we persuaded to find differently by the Division's and the Board's arguments on appeal. Before turning to their arguments, however, we note what they do not argue. Neither the Board nor the Division argues that the Division's showing satisfied the "harmful exposure" standard. They never even acknowledge Granite Construction's argument concerning the Division's failure to meet this standard, appearing to concede the issue. That in itself is arguably fatal to their position, for

12

according to the Board in its decision here, the "harmful exposure" standard has yet to be overruled and so remains the applicable standard in cases involving section 5144(a)(1). (See also *Papich Construction Co., Inc., supra*, 2021 CA OSHA App.Bd. Lexis 23 at p. *13 ["the Board has historically held 'harmful exposure' is the actual required inquiry"].)

But even setting that aside, we find the Board's and the Division's arguments—all of which concern the "zone of danger" standard—unpersuasive. The Board, to start, follows a similar approach it followed in the administrative proceedings in discussing the "zone of danger" standard. It argues the "worksite constitutes 'a zone of danger' " because *Coccidioides* is endemic in Monterey County, "[e]veryone involved in the . . . project" acknowledged the risk of Valley fever, and dust-generating activities (like those Granite Construction performed) increase the likelihood of exposure to *Coccidioides*. Those considerations, as noted, show that the worksite was a potential zone of danger, with *Coccidioides* potentially present. But again, the relevant standard is not focused on exposure or access to a potential zone of danger; it is instead focused on a zone of danger in fact—and the evidence fails to establish the existence of such a zone here. Monterey County, as covered, might have relatively high rates of Valley fever. And regulatory agencies might, for that reason, have cause to encourage employers like Granite Construction to require their outdoor workers to wear masks as a preventive measure, even if the presence of *Coccidioides* is not confirmed. But that does not mean that the worksite here was a zone of danger because of the presence of *Coccidioides*—a fungus that we can, at most, only speculate was present.

The Board next, taking a different approach, asserts Granite Construction forfeited its challenge to the sufficiency of the evidence. That is so, it argues, because Granite Construction provided only a one-sided account of the relevant facts. (See *Rayii v. Gatica* (2013) 218 Cal.App.4th 1402, 1408 [an appellant "who cites and discusses only evidence in [his or her] favor fails to demonstrate any error and waives the contention that the evidence is insufficient to support the judgment"].) But the Board never

13

discusses the facts that Granite Construction allegedly failed to cover. It instead vaguely states that Granite Construction "cites minimal evidence, and only where that evidence might, out of context, support its position." Unpersuaded by this showing, we reject the Board's claim of forfeiture.

The Division, in turn, argues its evidence satisfied the "zone of danger" standard and then says the "zone of danger here is exposure to cocci spores." But the zone of danger is a physical place, not an experience. And to the extent the Division believes Granite Construction's employees were exposed to *Coccidioides*, it cites nothing in the record to support this claim. Although, in its statement of facts, it claims "the health department found that there were confirmed cases of Valley fever from employees working at the jobsite," it never backs up this claim. It instead cites an article discussing Valley fever at two solar power facilities in San Luis Obispo County, not Monterey County. And although the Division further asserts that the CDC confirmed seven cases of Valley fever "among workers constructing the California Flats Solar Project," the article it cites never specifically or directly mentions the California Flats Solar Project but instead discusses an undisclosed solar farm in Monterey County. Nor, as far as we can find in our review of the transcript, did the Division ever present evidence showing the article concerned this project; it instead simply described it as "a CDC publication on a study of Valley Fever outbreak among workers constructing a solar power farm in Monterey County." The Division may nonetheless speculate that *Coccidioides* was present at the worksite here, but speculation is not substantial evidence. (*People v. Davis, supra*, 57 Cal.4th at p. 360.)

The Division also contends it is too difficult to test for the presence of *Coccidioides* and so suggests we must simply presume the fungus was present, with the burden then shifted on to Granite Construction to prove the negative—that *Coccidioides* was not present. It adds that workplace safety laws should be construed broadly under our Supreme Court's precedent. (See *Carmona v. Division of Industrial Safety* (1975) 13

14

Cal.3d 303, 312 [work safety laws in the Labor Code should be construed broadly].) But it cites nothing to show that testing for *Coccidioides* is, as it claims, difficult; and after reviewing the record, we find that its own expert assumed that a test existed to test for the presence of *Coccidioides* in the soil. The Division, moreover, cites no authority creating an exception to the "harmful exposure" and "zone of danger" standards in these types of circumstances. Again, the "harmful exposure" standard requires "[a]n exposure," not an exposure except when it is difficult to prove an exposure. And the "zone of danger" standard requires an area that presents a danger to employees, not an area that presents a danger except when it is difficult to prove the danger.

In sum, we find the Board's conclusion that Granite Construction violated section 5144(a)(1) was not supported by substantial evidence. Neither of the Board's offered standards for evaluating employee exposure under section 5144(a)(1) are satisfied when a harmful contaminant is only, at most, speculatively present. Nor, considering section 5144(a)(1)'s plain language, can we say that its requirements clearly apply in these types of circumstances. Perhaps in the future, the Board may adopt a broader interpretation of section 5144(a)(1) that involves neither the "zone of danger" standard nor the "harmful exposure" standard. (See *Henning v. Industrial Welfare Com.* (1988) 46 Cal.3d 1262, 1269 [an agency generally may change its interpretation of a statute]; but see *FCC v. Fox Television Stations, Inc.* (2012) 567 U.S. 239, 253-254 [when an agency changes its interpretation, "regulated parties should know what is required of them so they may act accordingly" before the agency starts imposing penalties].) But that is not an issue before us today. And applying the Board's existing standards for interpreting section 5144(a)(1), we conclude that its finding that employees were exposed to dust containing *Coccidioides* lacks evidentiary support.[3]

---

[3] Because we find the Board's decision is not supported by substantial evidence, we need not address Granite Construction's other arguments for challenging the finding that it

III

*Section 1509, subdivision (a)*

Granite Construction also challenges the Board's finding that it violated section 1509, subdivision (a)—which was tied to the Board's finding that it violated section 5144(a)(1). We agree.

Section 1509, subdivision (a) states: "Every employer shall establish, implement and maintain an effective Injury and Illness Prevention Program in accordance with section 3203 of the General Industry Safety Orders." Section 3203, in turn, as relevant here, states: "[E]very employer shall establish, implement and maintain an effective Injury and Illness Prevention Program (Program)" that, at a minimum, includes "methods and/or procedures for correcting unsafe or unhealthy conditions, work practices and work procedures in a timely manner based on the severity of the hazard: [¶] (A) When observed or discovered; and, [¶] (B) When an imminent hazard exists which cannot be immediately abated without endangering employee(s) and/or property, remove all exposed personnel from the area except those necessary to correct the existing condition." (§ 3203, subd. (a)(6).)

In its citation here, the Division alleged Granite Construction violated section 1509, subdivision (a) because it did not implement proper practices to protect its employees from dust containing *Coccidioides*. The Board agreed, relying on its finding that "employees were exposed to hazards associated with Valley Fever." As covered

violated section 5144(a)(1). These include its arguments that (1) the Board has no authority to regulate exposure to *Coccidioides*; (2) the Board should have dismissed the Division's citation because the company complied with a new statute requiring companies to provide Valley fever awareness training under certain circumstances; (3) *Coccidioides* is not an atmospheric contaminant within the meaning of section 5144(a)(1), because a contaminant is a material that is foreign to the environment and *Coccidioides* is native to the environment; (4) it implemented sufficient controls to limit exposure to any harmful dust even without masks; and (5) even if it violated section 5144(a)(1), the violation should not have been deemed a serious violation.

16

above, however, we conclude that the Board's finding that "employees were exposed to hazards associated with Valley Fever" lacks evidentiary support. (See Lab. Code, § 6629, subd. (d).)[4]

## IV

### *Section 5144(e)(1)*

Lastly, Granite Construction challenges the Board's finding that it violated section 5144(e)(1)—a provision that requires employers to "provide a medical evaluation to determine the employee's ability to use a respirator, before the employee is . . . required to use the respirator in the workplace." Granite Construction argues section 5144(e)(1) is inapplicable because it never required its employees to use masks. It then, challenging the Board's contrary finding, asserts the Board wrongly credited the testimony of Goff after the ALJ found him not credible, says Goff's and Cervantes's poor memories weaken their credibility, and contends its employees signed paperwork showing that the masks it provided (i.e., the N95 masks) were for voluntary use only.

We reject its argument. Even setting aside Goff's testimony, we find the record contains sufficient evidence to show that Granite Construction required its employees to wear masks.[5] Cervantes testified that he was a Granite Construction employee in 2017 and worked at the California Flats Solar Project site. He also testified that Granite Construction required its employees to wear masks when it was dusty. That was not a suggestion or advice; it was a "rule." Cervantes added that when supervisors saw employees without masks, they told them to put on their masks. Consistent with

---

[4] Having resolved Granite Construction's claim on this ground, we need not address its additional argument that it implemented effective practices to prevent exposure to *Coccidioides*. Nor need we address its argument that even if it failed to do so, its violation should not have been found to be a serious violation.

[5] We assume, for purposes here, that an N95 mask is a "respirator" within the meaning of section 5144(e)(1)—something that Granite Construction has not disputed.

17

Cervantes's testimony, moreover, Granite Construction's Job Hazard Analysis mentioned dust as a potential hazard for certain activities and instructed employees to "[a]pply N95 dust mask if dust around work area is present" and "[u]se N95 dust mask if necessary."

Considering this evidence, we find substantial evidence supports the Board's finding that Granite Construction required its employees to wear masks—at least when it was perceived to be dusty. (*People v. Barnwell, supra*, 41 Cal.4th at p. 1052 [the testimony of a single witness can constitute substantial evidence].) Although Granite Construction, in a footnote, quotes the ALJ as saying that "Goff's and Cervantes' poor memories weaken their credibility," it ultimately only discusses details allegedly showing Goff's poor memory, with nothing showing the same for Cervantes. (See *Jumaane v. City of Los Angeles* (2015) 241 Cal.App.4th 1390, 1406 [courts "may disregard any claims when no reference [to the record] is furnished"]; see also *Holden v. City of San Diego* (2019) 43 Cal.App.5th 404, 419-420 [courts need not address arguments made in footnotes].) And although Granite Construction claims its employees signed paperwork showing that the masks provided were for voluntary use only, all it cites in support are two unsigned documents. It cites nothing showing that any employee signed these documents. And even if its employees had signed these documents, that would not necessarily be enough to counter Cervantes's testimony, for "[e]ven when there is a significant amount of countervailing evidence, the testimony of a single witness that satisfies the [substantial evidence] standard is sufficient to uphold the finding." (*Barnwell*, at p. 1052.)

18

## DISPOSITION

The judgment is reversed. The trial court is instructed to enter a new judgment partly granting Granite Construction's petition, consistent with this opinion. Granite Construction is entitled to recover its costs on appeal. (Cal. Rules of Court, rule 8.278(a).)


                                                /s/
                                          BOULWARE EURIE, J.


We concur:


    /s/
RENNER, Acting P. J.


    /s/
KRAUSE, J.

19